# In Arbitration

David Finneman,

      Claimant,

v.

Producers Agriculture
Insurance Company,

      Respondent.

## Findings, Determinations, and Award

This matter came before the undersigned, the duly designated and appointed Arbitrator pursuant to Manager's Bulletin MGR-12-003.1 and Section 33 of the Whole-Farm Revenue Protection Pilot Policy. The parties agreed to present their evidence in the form of written submissions in lieu of an evidentiary hearing. The parties and Arbitrator had a question-and-answer conference, and the parties produced additional information after the conference.

Claimant David Finneman commenced this arbitration seeking coverage under Whole Farm Revenue Protection ("WFRP") insurance policy No. 2017-46-987-1029811 issued by Respondent Producers Agriculture Insurance Company ("ProAg") for the 2017 crop year. He sought indemnity of no less than $147,096.

ProAg had denied Mr. Finneman's claim for the 2017 crop year. The grounds included failure to list Mr. Finneman's spouse, Connie Finneman, as a person having a "substantial beneficial interest" ("SBI"). This issue was decided in Mr. Finneman's

1

Exhibit 2

favor after ProAg sought a summary determination that Mr. Finneman's claim was properly denied on that basis.

ProAg continues to believe that Connie Finneman retained an SBI under applicable law and regulations, thus requiring denial of the claim. In addition, it contends that, after the revenue from separately insured C&D Acres LLC ("C&D") operations are considered, Mr. Finneman has failed to prove that "his Revenue-to-Count" for crop year 2017 was less than his Insured Revenue. Because of that, it contends, he did not qualify for the payment of indemnity.

The Arbitrator must, therefore, determine three issues to resolve this dispute:

1. Did ProAg properly deny Mr. Finneman's claim for failing to list Connie Finneman as a person having an SBI?
2. Did ProAg properly deny indemnity based on C&D's revenue?
3. If the answer to issue 2 is "no," what amount is Mr. Finneman entitled to recover?

Having carefully reviewed the parties' submissions and arguments, the Arbitrator now issues the following Findings, Determinations, and Award

## Background and Findings

### The Finnemans and C&D

For years, Mr. Finneman farmed as part of C&D, a South Dakota limited liability company established by Mr. Finneman and his wife, Connie. Connie Finneman disassociated from C&D in 2011. C&D continued its farming operations as a single-member LLC, with Mr. Finneman as the sole member.

C&D insured crops under a traditional Multiple Peril Crop Insurance ("MPCI") policies in crop year 2017 as follows:

| Pro Ag Policy | Crop | Acres | County, State |
|---|---|---|---|
| 20-987-1031310 | Soybeans | 213.3 | Kingman County, Kansas |
| 46-987-1031311 | Safflower | 178.4 | Pennington County, South Dakota |
| 46-987-1031314 | Safflower | 473.7 | Meade County, South Dakota |
| 46-987-1031638 | Soybeans | 53.2 | Aurora County, South Dakota |
| 46-987-1031641 | Soybeans | 124.9 | Jerauld County, South Dakota |

*Mr. Finneman's Pennington County crops*

Mr. Finneman also farmed under his own name – and not C&D's – in 2017. He farmed 316 acres of non-irrigated corn and 280 acres of non-irrigated safflower in Pennington County, South Dakota. His crops were insured by a separate, policy, Pro Ag Policy No. 2017-46-987-1029811.

When applying for his policies in Pennington County, Mr. Finneman did not list Connie as an SBI. He did, however, have a separation agreement drawn up under South Dakota law in which he and Connie agreed, among other things, to settle all aspects of their marital rights and affairs and to "lead separate lives," free of control of the other as if they were single. They divided up their marital property, giving Mr. Finneman sole ownership of his farming entity, free of any claim Ms. Finneman may have to that entity. A copy of that separation agreement was placed in his insurance file.

Mr. Finneman relied on agents of ProAg to provide the policy for his Pennington County crops. He dealt primarily with Stuart Hofer. He was told that he was able to insure his Pennington county crops separately from C&D's crops, which were under a different policy. He was not told by ProAg during the underwriting process that his C&D crops, although separately insured, would be used in determining his Revenue-to-Count in the event of a loss of his Pennington County crops. Of course, because C&D crops were of much greater value that his Pennington County crops, counting those crops against the Pennington County crops would, in many cases, lead to little or no coverage for his Pennington County crops.

There is no indication that Mr. Finneman was anything less than above-board, truthful, and honest in all his dealings with ProAg with to regard C&D's insurance and his Pennington County crop insurance.

Crop insurance coverage is based, essentially, on the amount of expected revenue from an insured crop. This revenue is what is protected by the insurance policy. If revenue actually received by the insured, after considering other factors, is less than the protected revenue, the insured has a payable loss. The amount that is paid is based on a percentage of the loss the insured chooses to cover.

The amount of farm revenue protected by a WFRP policy is based on the insured's "Approved Revenue." Approved Revenue is the lower of the Expected Revenue for the crop year in question, *or* the insured's Whole Farm Historic Average Revenue. "Expected Revenue" is derived from the insured's Farm Revenue Report, which lists the commodities to be insured and the expected revenue for the insured

commodities based on the acreage to be planted, expected price, and expected yield. As ProAg notes, Whole Farm Historic Revenue Average does not come into play for Mr. Finneman because his expected revenue was lower than Whole Farm Historic Average.

Mr. Fineman's original expected gross revenue report was provided in March 2017, but was revised by a later report that set out Expected Revenue of $196,128 as follows:

|  | Expected Yield | Expected Value | | Expected Revenue | | Acres | | Total Expected Revenue |
|---|---|---|---|---|---|---|---|---|
| Corn (NI) | 120 bu. | X $3.96 | = | $475.20 | X | 316 | = | $150,163 |
| Safflower | 684 lbs. | X $0.24 | = | $164.16 | X | 280 | = | $ 45,965 |
|  |  |  |  |  |  |  |  | $196,128 |

While a farmer applies for his policy using his version of expected revenue, the policy is not applicable until accepted by ProAg. Mr. Finneman notes that the source of his values was from ProAg's underwriting department. Mr. Finneman now accepts, however, that it would be proper to adjust the corn expected yield from 120 bushels to 112.

In July, expected revenue was reduced to $179,018 as follows:

|  | Expected Yield | Expected Value | | Expected Revenue | | Acres | | Total Expected Revenue |
|---|---|---|---|---|---|---|---|---|
| Corn (NI) | 145 bu. | X $3.28 | = | $475.60 | X | 316 | = | $150,290.00 |
| Safflower | 684 lbs. | X $0.15 | = | $102.60 | X | 280 | = | $ 28,728.00 |
| Total |  |  |  |  |  |  |  | $179,018.00 |

In January of 2018, ProAg adjusted Mr. Finneman's Total Expected Revenue down further. It says it relied on market data to reduce his expected revenue to $134,904, after changing expected yield and value as follows:

| | Expected Yield | | Expected Value | | Expected Revenue | | Acres | | Total Expected Revenue |
|---|---|---|---|---|---|---|---|---|---|
| Corn (NI) | 112 bu. | X | $3.00 | = | $336.00 | X | 316 | = | $ 108,176 |
| Safflower | 684 lbs. | X | $0.15 | = | $102.60 | X | 280 | = | $ 28,728 |
| Total | | | | | | | | | $ 134,904 |

As noted, the insured opts for the level of coverage under a crop insurance policy. The higher the percentage of coverage, the higher the premium. Mr. Finneman opted for a 75% coverage level. Thus, his insured revenue after ProAg's revisions was $101,178.

### Coverage denial based on failing to list Connie Finneman

As noted, there is no dispute that Mr. Finneman's Pennington County crop was a loss. It produced no revenue. So, he filed a claim under the policy.

But Pro Ag advised Mr. Finneman in April of 2018 that his policy was being voided because he failed to list Connie as having an SBI. By Order dated January 13, 2020, in this arbitration, it was determined that, by virtue of the separation agreement, Connie did not hold an SBI in Mr. Finneman's insured crops. ProAg, however, maintains that Connie continued to hold an SBI in Mr. Finneman's insured corps.

*Further denial of claim*

After the order finding the policy was not void was issued, ProAg continued to deny the claim because it had concluded that Mr. Finneman's "Revenue-to Count" for crop year 2017 exceeded his "Approved Revenue" under the policy. ProAg's computation of Revenue-to-Count includes all the income from C&D reported on its tax return. C&D is insured under a separate policy, and Mr. Finneman and his CPA reported that all receipts posted in 2017 were paid to C&D and deposited into C&D's bank account. But ProAg contends its procedures require it to include C&D's income in Mr. Finneman's Revenue-to-Count.

Mr. Finneman contends his "Revenue-to-Count" should be $0, as there is no dispute his insured crops were a complete loss. He further contends that the adjustments Pro Ag made to his Expected Revenue were incorrect. He concedes, however, he should return the premium refund given to him after ProAg voided his policy.

## Determination

1. *Did ProAg properly deny Mr. Finneman's claim for failing to list Connie Finneman as a person having an SBI?*

Denial of the claim on this basis was improper. As noted, ProAg sought a summary determination that Mr. Finneman's claim was properly denied because Mr. Finneman did not list Connie as a person having an SBI. The Arbitrator determined, however, that based on the Separation Agreement between Mr. and Mrs. Finneman, they were considered to be "legally separate" under applicable state law. Thus, under the terms of the applicable policy Mr. Finneman was not required to list Connie as

having an SBI. The policy, therefore, was not void and ProAg's position to the contrary is rejected for the reasons more fully set out in the Arbitrator's Order of January 13, 2020.

### 2. Did ProAg properly deny indemnity based on C&D's revenue?

Careful review of the record requires a conclusion that C&D's revenue should not have been included in Mr. Finneman's Revenue to Count. ProAg, in underwriting and selling insurance to Mr. Finneman, did not determine that such inclusion was necessary under its policies and procedures. Otherwise, it would not have assured Mr. Finneman he could separately insure C&D and his personal operations. Including C&D's revenue would mean in many cases he would have no real coverage for his Pennington County crops given the relative sizes of acreage and amounts involved. Surely, ProAg's aim could not have been to sell only illusory coverage.

ProAg's agents and underwriters work with crop insurance in general and ProAg's insurance in particular on an ongoing basis. Their assurances and actions are properly regarded as an admission that ProAg's processing of the claim does not require use of C&D's revenue.

ProAg argues that its loss determination procedures require that the numbers for Mr. Finneman's claim be taken from C&D's tax return form. There is no other way to compute the claim, it argues. And doing things any other way, it says, represents an improper interpretation of regulations and procedures. Further, it notes that equitable relief is not available in a crop insurance case.

But, as the Eighth Circuit has noted, "[o]ne may have to turn 'square corners' when dealing with a government entity, but this does not mean the government may operate so recklessly as to put the parties dealing with it entirely at its mercy." *A.W.G. Farms, Inc. v. Federal Crop Ins. Corp.*, 757 F.2d 720, 729 (8th Cir. 1985). The same is also true of ProAg when selling federal crop insurance, particularly considering that it is in the business of selling policies, as it did here to Mr. Finneman.

It is true that arbitrators are not to apply estoppel and other equitable principles in crop insurance matters. *Id.* at 728 -29. So, neither estoppel nor other equitable principles will be applied here. But even crop insurance contracts incorporate a covenant of good faith and fair dealing on the part of the parties. *Id.* This compels a conclusion that, under the unique facts of this case, C&D's Revenue attributed to the non-insured crops are not property counted when determining Mr. Finneman's losses in Pennington County.

Further, ProAg has not provided any controlling authority mandating that an LLC's revenue be applied to a separately insured crop grown insured by a member of the LLC. Instead, it provides only its take on its regulations and policy provisions that it now maintains must result in denying indemnity. That is not enough to overcome its early determination, operating as an admission, that the Pennington Crops could be separately insured.

### 3. *What amount is Mr. Finneman entitled to recover?*

Having determined that Mr. Finneman is entitled to recover indemnity for his 2017 loss, the remaining issue is the amount to which he is entitled. Mr. Finneman

9

contends he is entitled to value his crops, subject to conceding a yield adjustment, at the highest value of the estimates in his file, which he says was accepted by ProAg when the insurance was written. Based on a claimed Approved Revenue of $186,117, adjusted by expenses to $150,928, and the 75% compensation rate he opted for he claims indemnity of $113,196. After repaying his premium refund, he claims, $109,693 together with interest.

ProAg argues, however, that it properly reduced Mr. Finneman's expected value to $134,904, in January of 2018, based on additional information it obtained concerning local sales and yields. Applying his 75% compensation rate, this leads to an insured value of $101,178. It also notes that, if he recovers, he will be required to pay a net premium of $3,397 because a portion of his premium and fees were refunded when ProAg voided his policy.

ProAg's policy and procedure entitle it to verify or adjust the prices and yields based on more accurate data available to it. It did this in coming to its value of $134,904. Thus, Mr. Finneman is entitled to receive $101,178 less a premium refund of $3,397, for a total of $97,781.

Pursuant to Mr. Finneman's policy, section 34,  Mr Finneman is also entitled to interest simple interest accruing from May 28, 2018,  at the rate established by the Secretary of the Treasury under section 12 of the Contract Disputes Act of 1978, (41 U.S.C. 611) published in the Federal Register semiannually on or about July 1 and July 11 of each year. Those rates are as follows:

| Period | Rate |
|---|---|
| May 21-June 30, 2018 | 2.625% |
| July 1-December 31, 2018 | 3.500% |
| January 1 -June 30, 2019 | 3.625% |
| July 1 -December 31, 2019 | 2.625% |
| January 1 - June 30, 2020 | 2.125% |
| July 1- December 31, 2020 | 1.125% |
| January 1-June 30, 2021 | 0.875% |
| July 1- December 31, 2021 | 1.125% |
| January 1- June 30, 2022 | 1.625% |

The Arbitrator assumes that ProAg is easily able to calculate the interest. If there is any difficulty in doing so, either party may bring that issue to the Arbitrator's attention with ten days of the date of this Award for a final determination.

## AWARD

Based on the foregoing findings and determinations, the undersigned awards as follows:

1. Respondent Producers Agriculture Insurance Company shall pay Claimant David Finneman **$97,781 plus simple interest accruing from May 28, 2018, at the following rates:**

| Period | Rate |
|---|---|
| May 21-June 30, 2018 | 2.625% |

| | |
|---|---|
| July 1-December 31, 2018 | 3.500% |
| January 1 -June 30, 2019 | 3.625% |
| July 1 -December 31, 2019 | 2.625% |
| January 1 - June 30, 2020 | 2.125% |
| July 1- December 31, 2020 | 1.125% |
| January 1-June 30, 2021 | 0.875% |
| July 1- December 31, 2021 | 1.125% |
| January 1- June 30, 2022 | 1.625% |

Any issues regarding computation shall be submitted to the Arbitrator within ten calendar days of the date of this Award.

2. The parties shall each bear their expenses, costs, and payments to the arbitrator as incurred.

3. This Award is in full settlement of all claims submitted to this Arbitration. All claims not expressly granted herein are hereby denied.

Dated:  June 20, 2020

_David A. Allgeyer_
David A. Allgeyer, Arbitrator