## REQUEST FOR REVIEW OF ARBITRATION AWARD

To:     Deputy Administrator
        Risk Management Agency
        United States Department of Agriculture

***Submitted via electronic mail to: subpartx@rma.usda.gov***

Producers Agriculture Insurance Company ("ProAg") seeks review of an arbitrator's Findings, Determinations, and Award (the "Award") (*see* Appendix at Tab 7) for the purpose of determining if an FCIC interpretation should have been sought <u>and</u> if the Award was not in accordance with existing and fully-binding final agency determinations.  The Award was rendered in an arbitration between David Finneman and ProAg involving a 2017 Whole-Farm Revenue Protection ("WFRP") Pilot Policy, being policy number 2017-46-987-1029811.

### I.     Authority for Request

This request is submitted in accordance with 7 C.F.R. § 400.766(b)(3) and (b)(4), which provide as follows:

> **§ 400.766  Basis and applicability.**
> ...
>
> (b) With respect to a final agency determination or a FCIC interpretation:
> ...
>
> (3) Failure to request a final agency determination or FCIC interpretation when required by this subpart or failure of NAD, arbitrator, mediator, or judge to adhere to the final agency determination or FCIC interpretation provided under this subpart will result in the nullification of any award or agreement in arbitration or mediation in accordance with the provisions in the "Mediation, Arbitration, Appeal, Reconsideration, and Administrative and Judicial Review" section or similar section in all crop insurance policies.
>
> (4) If either party believes an award or decision was rendered by NAD, arbitrator, mediator, or judge based on a disputed provision in which there was a failure to request a final agency determination or FCIC interpretation or NAD, arbitrator, mediator, or judge's decision was not in accordance with the final agency determination or FCIC interpretation rendered with respect to the disputed provision, the party may request FCIC review the matter to determine if a final agency determination or FCIC interpretation should have been sought in accordance with § 400.767.

Exhibit 3

*Request for Review of Arbitration Award*
*Page 2 of 10*

(i) Requests should be submitted through one of the methods contained in § 400.767(a)(1);

(ii) If FCIC determines that a final agency determination or FCIC interpretation should have been sought and it was not, or the decision was not in accordance with the final agency determination or FCIC interpretation rendered with respect to the disputed provision:

(A) The award is automatically nullified; and

(B) Either party may appeal FCIC's determination that a final agency determination or FCIC interpretation should have been sought and it was not, or the decision was not in accordance with the final agency determination or FCIC interpretation rendered with respect to the disputed provision to NAD in accordance with 7 CFR part 11.

Additional authority for this request is found in section 33(a)(1)(ii) of the WFRP Pilot Policy (17-0076 WFRP-Pilot), which states:

33. **Mediation, Arbitration, Appeal, Reconsideration, and Administrative and Judicial Review.**
   (a)   If you and we fail to agree on any determination made by us, except those specified in this section 33(d) or (e), the disagreement may be resolved through mediation in accordance with section 33(g). If resolution cannot be reached through mediation, or you and we do not agree to mediation, the disagreement must be resolved through arbitration in accordance with the rules of the American Arbitration Association (AAA), except as provided in sections 33(c) and (f), and unless rules are established by FCIC for this purpose. Any mediator or arbitrator with a familial, financial or other business relationship to you or us, or our agent or loss adjuster, is disqualified from hearing the dispute.
      (1)   All disputes involving determinations made by us, except those specified in section 33(d) or (e), are subject to mediation or arbitration. However, if the dispute in any way involves a policy or procedure interpretation, regarding whether a specific policy provision or procedure is applicable to the situation, how it is applicable, or the meaning of any policy provision or procedure, either you or we must obtain an

> interpretation from FCIC in accordance with 7 CFR part 400, subpart X or such other procedures as established by FCIC.
>
> ...
>
> (ii)  Failure to obtain, or comply with, any required interpretation from FCIC will result in the nullification of any agreement or award.

## II.   Background and Factual Summary

David Finneman filed for arbitration to dispute determinations rendered in connection with a WFRP policy issued to him by ProAg for the 2017 tax/policy year. ProAg determined the policy was void because Mr. Finneman failed to identify his spouse, Connie Finneman, on the application as a person with a substantial beneficial interest ("SBI") in the insured. In addition to challenging the voidance of his policy, Mr. Finneman claimed that he was entitled to a WFRP indemnity payment. The arbitration was initiated in accordance with FCIC Manager's Bulletin MGR-12-003.1 and privately administered. The parties selected Minneapolis attorney David A. Allgeyer to serve as arbitrator.

The voidance issue was presented to the arbitrator by way of a dispositive motion. The arbitrator resolved this issue in favor of the insured on January 29, 2021, concluding that David and Connie Finneman were "legally separated or otherwise legally separate" for purposes of applicable (South Dakota) dissolution of marriage laws, such that Connie Finneman was not an SBI-holder.

After resolution of the SBI/voidance issue, the remaining question for the arbitrator was whether the insured was entitled to collect indemnity under the policy and, if so, in what amount. This issue had two disputed components: (1) expected values for the commodities reported under the policy; and (2) revenue-to-count.

Regarding expected values, there were two reported commodities: corn and safflower. Based on local market quotes from the area where the insured intended to market these commodities, ProAg determined that the expected values were $3.00 per bushel for corn and $.15 per bushel for safflower, which were the same values initially reported on the Intended Farm Operation Report. In an amended version of the Intended Farm Operation Report, the insured reported expected values of $3.96 per bushel for corn and $0.24 per bushel for safflower. The arbitrator concluded that ProAg was correct in establishing expected values using local market data and thus established the expected values at $3.00 per bushel for corn and $.15 per bushel for safflower, resulting in expected revenue of $134,904. The insured's 2017 expected revenue was less than historic average revenue and thus, per the arbitrator's decision, the amount of approved revenue was $134,904 and insured revenue (based on the coverage level of 75%) was

*Request for Review of Arbitration Award*
*Page 4 of 10*

$101,178.  The issue of expected values did not involve or require an interpretation of policy or procedure.

Regarding revenue-to-count, ProAg completed an Allowable Revenue Worksheet using the insured's 2017 Schedule F and determined that allowable revenue for the year of insurance was $161,771.  This amount was reported on Line 2 of the insured's Schedule F as income from the sale of grain.  ProAg made an inventory adjustment in the sum of -$26,653 (based on the WFRP Inventory Report submitted with the insured's Final Farm Operation Report) and an adjustment for crop insurance indemnities received by the insured in the sum of $81,441 to arrive at revenue-to-count of $216,559.  Since revenue-to-count (as determined by ProAg) exceeded insured revenue, ProAg found that no indemnity was due.

The insured maintained that revenue-to-count should have been established at $0, claiming that none of the commodities reported under the WFRP policy were harvested.  The insured argued that the income reported on Line 2 of his Schedule F (as well as the crop insurance payments he received in 2017) were from crops grown by C&D Acres, LLC ("C&D"), a disregarded entity of which Mr. Finneman was the sole member.  Without citing any policy or procedure that would allow such a result, the insured maintained that the C&D income should have been ignored for purposes of completing the Allowable Revenue Worksheet and the WFRP Claim for Indemnity.

In its arbitration submissions, ProAg noted that the calculations of allowable revenue and revenue-to-count are addressed in the WFRP policy and handbook and that there is no discretion on the part of the AIP to exclude income from a disregarded entity that is reported to the IRS on the named insured's Schedule F (and under the named insured's tax identification number). ProAg further cautioned that, if it was the arbitrator's finding that (despite the clarity of the policy and handbook provisions) there was any question of whether the C&D income was properly included as allowable revenue, the parties **must** seek an interpretation on this issue in accordance with section 33(a)(1) of the WFRP Policy.  In addition, ProAg pointed out that the arbitrator was strictly bound to apply the contractual terms of coverage and handbook as construed by RMA and that the arbitrator was prohibited from waiving any of the terms of coverage or considering claims based in reliance, estoppel, tort, or equity.  ProAg provided to the arbitrator the FADs addressing the limits on arbitral authority, including FAD-211 and FAD-282.

In the transmission of its final submission to the arbitrator, ProAg reiterated that issues of policy or procedure interpretation must be resolved by the FCIC in accordance with Subpart X, noting:

> In the attached submission, we have cited the provisions in the policy and handbook that plainly require the C&D income (which was reported to the IRS under David Finneman's taxpayer identification number) to be included as allowable revenue and hence revenue-to-count.  Likewise, the Claimant has failed

*Request for Review of Arbitration Award*
*Page 5 of 10*

> to identify any language in the policy or handbook that would even plausibly support the exclusion of the C&D income. Nevertheless, if you believe there to exist a basis under the policy or handbook for excluding the C&D income from allowable revenue, ProAg would ask that this arbitration be stayed so that the parties may seek an interpretation from the FCIC in accordance with section 33(a)(1) of the WFRP policy.

> (Appendix at Tab 6)

On June 20, 2022, the arbitrator issued the Award, finding that the insured's revenue-to-count was $0 and awarding indemnity in the sum of $101,178 less a premium credit of $3,397, for a net indemnity of $97,781. The arbitrator also awarded simple interest in accordance with section 34 of the WFRP policy.

### III.   Relief Requested

ProAg requests FCIC review of the Award to determine: (a) if a final agency determination or FCIC interpretation should have been sought in accordance with 7 C.F.R. § 400.767; and (b) if the Award was not in accordance with existing final agency determinations and/or FCIC interpretations with respect to disputed provisions in the WFRP Pilot Policy and/or WFRP Handbook. As shown below, the arbitrator interpreted the WFRP policy and handbook in concluding that revenue attributable to commodities grown by a disregarded entity should not have been considered part of the insured's allowable revenue for WFRP purposes. As such, an FCIC interpretation should have been sought by the parties and was not. Additionally, the arbitrator failed to adhere to the FCIC's binding final agency determinations by basing his decision on common law and equitable principles rather than the contractual terms of coverage. For both of these reasons, the Award should be nullified in accordance with 7 C.F.R. § 400.766(b)(4)(ii)(A).

**a. The arbitrator rendered an award based on a disputed provision for which there was a failure to request an FCIC interpretation.**

On the crucial issue of revenue-to-count, the question before the arbitrator was whether income reported by the insured on his Schedule F for the year of insurance was properly included on the Allowable Revenue Worksheet. The undisputed proof was that the income reported on the Schedule F was derived from commodities raised by C&D (a disregarded entity of which the named insured was the sole member), that these other commodities were not listed on the insured's farm operation reports, and that these other commodities were separately insured under multiple peril crop insurance policies issued to C&D.

*Request for Review of Arbitration Award*
*Page 6 of 10*

The WFRP policy and handbook plainly and explicitly provide that income reported on the insured's Schedule F must be entered on the Allowable Revenue Worksheet, and there is no exception for income earned by a disregarded entity.  Among the applicable provisions are:

- WFRP Pilot Policy, § 1: "All of the farming activities for which revenue and expenses are reported to the IRS under a single taxpayer identification number will be considered a single farm operation for WFRP purposes (e.g., a partnership filing a U.S. tax return for partnership income that includes revenue and expenses from separate row crop, perennial crop and livestock farms is a single farm operation because it files one tax return)."

- WFRP Pilot Policy, § 10(a)(2): "Allowable revenue for WFRP purposes" includes "revenue from … [t]he sales of animals, produce, grains and other commodities you raised.  (Line 2 of Schedule F)."

- WFRP Pilot Policy, § 23(c): "We will use your farm tax forms for the year of insurance to calculate your allowable revenue and allowable expenses for the insurance year on the Allowable Revenue Worksheet and the Allowable Expense Worksheet."

- WFRP Pilot Policy, § 25(e)(1): "To calculate your revenue-to-count we will … [d]etermine your allowable revenue from your farm tax forms for the insurance year using the Allowable Revenue Worksheet."

- WFRP Pilot Handbook, ¶ 44(3): "Allowable revenue for WFRP purposes is limited to the revenue listed in section 10 of the policy.  These items are directly listed on the Schedule F tax form or Substitute Schedule F so they can be transferred directly from the form onto the Allowable Revenue Worksheet."

- WFRP Pilot Handbook, ¶ 44(4): "Completion of the Allowable Revenue Worksheet is required to show which commodities are allowed from the farm tax forms and what adjustments are necessary."

- WFRP Pilot Handbook, Exhibit 15: "Completion of the Allowable Revenue Worksheet requires information taken directly from the applicant's/insured's Schedule F tax form. The items to be listed in the required element titled "Schedule F Part I or III Revenue" on the Allowable Revenue Worksheet are taken directly from the list of farm revenue listed in Part I (cash) or Part III (accrual) of the Schedule F tax form. *** For farm revenue item 'Sale of livestock, produce, grains, and other products you raised,' enter the dollar amount the applicant/insured entered in item 2 or 37 on their Schedule F."

*Request for Review of Arbitration Award*
*Page 7 of 10*

Additionally, regarding the insured's failure to report the C&D commodities on his farm operation reports, section 15(j)(1) of the WFRP Pilot Policy states:

> You must provide, sign and certify all required reports and you are responsible for the accuracy of all information contained in those reports. You should verify the information on all reports prior to submitting them to us. If you submit information on any report that is different than what is determined to be correct and the information you originally submitted resulted in … A lower insured revenue than the corrected insured revenue, the insured revenue under this policy will remain consistent with the reported information and all revenue will be included as revenue to count.

The insured failed to identify any provision in the policy or handbook that would ostensibly support the exclusion of the C&D income from the Allowable Revenue Worksheet. Instead, the insured relied on alleged assurances by the agent that his personal operation and the operation of the disregarded entity could be separately insured, i.e. that the personal operation could be insured under a WFRP policy and that the commodities of C&D could be insured separately under MPCI policies and excluded from the WFRP policy.

The arbitrator concluded as follows:

> Careful review of the record requires a conclusion that C&D's revenue should not have been included in Mr. Finneman's Revenue to Count. ProAg, in underwriting and selling insurance to Mr. Finneman, did not determine that such inclusion was necessary under its policies and procedures. Otherwise, it would not have assured Mr. Finneman he could separately insure C&D and his personal operations. Including C&D's revenue would mean in many cases he would have no real coverage for his Pennington County crops given the relative sizes of acreage and amounts involved. Surely, ProAg's aim could not have been to sell only illusory coverage.

> ProAg's agents and underwriters work with crop insurance in general and ProAg's insurance in particular on an ongoing basis. Their assurances and actions are properly regarded as an admission that ProAg's processing of the claim does not require use of C&D's revenue.

> ProAg argues that its loss determination procedures require that the numbers for Mr. Finneman's claim be taken from C&D's tax return form. There is no other way to compute the claim, it argues. And doing things any other way, it

*Request for Review of Arbitration Award*
*Page 8 of 10*

says, represents an improper interpretation of regulations and procedures. Further, it notes that equitable relief is not available in a crop insurance case.

But, as the Eighth Circuit has noted, "[o]ne may have to turn 'square corners' when dealing with a government entity, but this does not mean the government may operate so recklessly as to put the parties dealing with it entirely at its mercy." *A.W.G. Farms, Inc. v. Federal Crop Ins. Corp.*, 757 F.2d 720, 729 (8th Cir. 1985). The same is also true of ProAg when selling federal crop insurance, particularly considering that it is in the business of selling policies, as it did here to Mr. Finneman.

It is true that arbitrators are not to apply estoppel and other equitable principles in crop insurance matters. *Id.* at 728 -29. So, neither estoppel nor other equitable principles will be applied here. But even crop insurance contracts incorporate a covenant of good faith and fair dealing on the part of the parties. *Id.* This compels a conclusion that, under the unique facts of this case, C&D's Revenue attributed to the non-insured crops are not property counted when determining Mr. Finneman's losses in Pennington County.

Further, ProAg has not provided any controlling authority mandating that an LLC's revenue be applied to a separately insured crop grown insured by a member of the LLC. Instead, it provides only its take on its regulations and policy provisions that it now maintains must result in denying indemnity. That is not enough to overcome its early determination, operating as an admission, that the Pennington Crops could be separately insured.

(Appendix at Tab 7)

The arbitrator impermissibly engaged in policy interpretation in concluding "that C&D's revenue should not have been included in Mr. Finneman's Revenue to Count." If the arbitrator was not satisfied with the clarity of the policy and handbook provisions addressing the computation of allowable revenue and revenue-to-count, the proper course would have been to advise the parties of such, in which case an FCIC interpretation could have been obtained. Instead, the arbitrator rendered an award based on a disputed provision for which there was a failure to request an FCIC interpretation.

**b. The award was not in accordance with existing final agency determinations.**

In addition to impermissibly interpreting the policy and handbook, the arbitrator also ignored binding final agency determinations by relying on prior assurances of the agent and the concept

*Request for Review of Arbitration Award*
*Page 9 of 10*

of "good faith and fair dealing" to support his conclusion that the C&D revenue should not have been included as revenue-to-count.

In its existing, fully-binding final agency determinations, including but not limited to FAD-99, FAD-193, FAD-211, FAD-236, and FAD-282, the FCIC has repeatedly recognized that an arbitrator must strictly follow policy terms, related procedures and interpretations and cannot look to any common law theory or equity as grounds for a decision. *See, e.g.*, FAD-282 ("arbitrators can only review contract claims, damages are limited to the liability under the policy, and arbitrators do not have the authority to consider equitable claims or award attorney's fees, expenses, or compensatory, punitive, or other extra-contractual damages. Claims arising from misrepresentations, negligence, etc. would be considered equitable and an arbitrator is not authorized to consider such claims.") These FADs were binding in this arbitration because the same language interpreted therein (i.e., the non-waiver language in the preamble to the Common Crop Insurance Policy Basic Provisions and the limitations on arbitral authority in section 20 of the Common Crop Insurance Policy Basic Provisions) is contained in the preamble and section 33 of the WFRP Pilot Policy.

The arbitrator's decision that C&D revenue should not have been included as revenue-to-count was based entirely on equitable and common law principles and thus inconsistent with existing final agency interpretations addressing identical policy language.

## IV.    Record Submitted for Review

The Appendix submitted herewith contains true and correct copies of all pertinent portions of the arbitration record, including the Award.

## V.    Contact Persons

For ProAg:

W. Kurt Henke
Elizabeth T. Bufkin
Jeffrey S. Dilley
HENKE-BUFKIN LAW FIRM, P.A.
P.O. Box 39
Clarksdale, MS 38614
Phone:        662-624-8500
Emails:        wkh@henke-bufkin.com
                    etb@henke-bufkin.com
                    jsd@henke-bufkin.com

For David Finneman:

Wendell L. Hoskins II
LAW OFFICE OF WENDELL L. HOSKINS II
P.O. Box 1115
Caruthersville, MO 63830
Phone:        573-333-2600
Email:        wendell@wendellhoskins.com

*Request for Review of Arbitration Award*
*Page 10 of 10*

Date: July 18, 2022                          Respectfully submitted,

Jeffrey S.          Digitally signed by Jeffrey S.
                    Dilley
Dilley              Date: 2022.07.18 17:12:50
                    -05'00'

Elizabeth T. Bufkin
W. Kurt Henke
Jeffrey S. Dilley
*Attorneys for Producers Agriculture*
*Insurance Company*