IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

PRODUCERS AGRICULTURE
INSURANCE COMPANY,

        Petitioner,

v.

DAVID FINNEMAN,

        Respondent.

CASE NO.: 5:22-cv-05062-KES

**BRIEF IN SUPPORT OF PETITIONER'S
MOTION FOR SUMMARY JUDGMENT**

COMES NOW the Petitioner, Producers Agriculture Insurance Company ("ProAg"), and submits the following brief in support of its motion for summary judgment.

## I.    INTRODUCTION

The Federal Arbitration Act ("FAA") provides a mechanism for courts to conduct an "expedited judicial review to confirm, vacate, or modify arbitration awards." *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 578 (2008). ProAg has invoked this expedited process to seek vacatur of an arbitration award rendered in favor of the Respondent, David Finneman. By way of "counterclaim" to ProAg's petition, Finneman seeks confirmation of the award. In the alternative, Finneman has asserted original tort claims for extra-contractual damages.

This controversy involves a Whole-Farm Revenue Protection ("WFRP") policy issued to Finneman, who is a farmer in western South Dakota. WFRP policies are part of the federal crop insurance program, which is administered by the United States Department of Agriculture's Risk Management Agency ("RMA") and underwritten by the government-owned Federal Crop

Insurance Corporation ("FCIC"). The FCIC (acting through RMA)[1] sets the terms of coverage but contracts with approved insurance providers (ProAg being one of fourteen) to issue and service the policies.

Pursuant to the FCIC-mandated terms of the policy, disputes involving the insurer's "determinations" must be resolved through the arbitration process, but an arbitrator must defer to the FCIC on issues of policy interpretation. That is, the policy prohibits an arbitrator from interpreting the policy or any procedures used in policy administration. When interpretive issues arise, the parties must seek a written interpretation[2] from the FCIC, which becomes binding on the parties and the arbitrator. Following issuance of an arbitration decision, either party may request the FCIC to review the award to determine: (1) if an interpretation should have been sought and was not; or (2) the arbitration decision was not in accord with an existing interpretation. If the FCIC, upon review of an award, answers either of these questions in the affirmative, the award is "automatically nullified." *See* 7 C.F.R. § 400.766(b)(4).

Finneman initiated arbitration to settle disputes over determinations rendered by ProAg in connection with his 2017 WFRP policy. On June 20, 2022,[3] the arbitrator rendered an award in favor of Finneman for the sum of $97,781 plus simple interest. *See* Ex. 2. ProAg timely brought

---

[1] "For all relevant and practical purposes, the RMA and the FCIC are one and the same." *William J Mouren Farming, Inc v Great American Ins, Co.*, 2005 U.S. Dist. LEXIS 43772, at *6 (E.D. Cal. Aug. 24, 2005). Therefore, unless stated otherwise, both entities will be collectively referred to as the "FCIC."

[2] The FCIC issues two types of written interpretations: (1) final agency determinations, which are interpretations of federal crop insurance statutes and regulations (including those policy provisions that are published in the CFR); and (2) FCIC interpretations, which are interpretations of FCIC procedures (i.e. manuals, handbooks, and bulletins used in policy administration) and those policy provisions that are not published in the CFR. *See* 7 C.F.R. § 400.765.

[3] Due to scrivener's error the award was mis-dated June 20, 2020, but the award was actually issued and delivered to the parties on June 20, 2022.

this action seeking vacatur and/or nullification of the award on grounds that the arbitrator exceeded his powers by engaging in policy interpretation and disregarding existing FCIC interpretations. One day prior to filing its petition in this Court, ProAg also submitted a request to the FCIC to review the award. On October 20, 2022, the FCIC responded to the review request, concluding that the award <u>did</u> involve a disputed policy provision for which no interpretation was requested. The FCIC also issued its interpretation of the disputed provision, which was opposite the arbitrator's construction of the policy. Based on the FCIC's arbitration review determination (from which Finneman did not seek administrative or judicial review), the award is "automatically nullified." Accordingly, the Court must grant ProAg's petition and vacate the award.

As noted, Finneman has filed a counterclaim seeking confirmation of the award or, in the alternative, an award of extra-contractual damages. Per the FAA, confirmation may occur only if an award is <u>not</u> subject to vacatur or modification. Because the award must be vacated on ProAg's petition, the request for confirmation must likewise be denied. Finneman's alternative claims are barred under 7 C.F.R. § 400.352 and the policy provisions. Section 400.352 bars a farmer from seeking or recovering extra-contractual damages from an approved insurance provider unless he or she first obtains "authorization" (in the form of a non-compliance determination) from the FCIC. The FCIC refused to issue such authorization to Finneman, finding that there is no provision in the 2017 WFRP Pilot Policy or regulations permitting a farmer to pursue any relief beyond contractual indemnities and interest. Finneman appealed this decision to the National Appeals Division ("NAD") of the United States Department of Agriculture, and NAD likewise determined that extra-contractual damages cannot be sanctioned in conjunction with the 2017 WFRP Pilot Policy. Finneman has now challenged the FCIC's decision through a separate action filed in this Court. *See Complaint* (PageID#1-12), *Finneman v. USDA*, Case No. 5:23-cv-5034-KES (D.S.D.).

3

Pending disposition of that separate action, the FCIC's decision not to issue a determination to permit Finneman's pursuit of extra-contractual damages stands as a legal bar to any such claims.

For these reasons, the Court should enter judgment vacating the award and dismissing the counterclaim with prejudice.

## II.   THE FEDERAL CROP INSURANCE PROGRAM

The federal crop insurance program was created in 1938 with the passage of the Federal Crop Insurance Act (the "Act"), 7 U.S.C. § 1501 *et seq.*  The purpose of the Act is to "promote the national welfare by improving the economic stability of agriculture through a sound system of crop insurance and providing the means for the research and experience helpful in devising and establishing such insurance." 7 U.S.C. §1502(a).  The program is funded through the FCIC, which was created by the Act as a government-owned corporation.  The FCIC is vested with regulatory and rule-making authority. *See* 7 U.S.C. § 1508(o).  Its regulations are published in Title 7, Subtitle B, Chapter IV of the Code of Federal Regulations.

In the early years of the program, the FCIC served as a direct issuer of the policies.  In order to increase insurance availability, encourage greater farmer participation, and lower costs, Congress amended the Act in 1980 to permit private sector insurance companies (known as approved insurance providers, or "AIPs") to sell and service the policies, with the FCIC acting as regulator and reinsurer.  With the establishment of this public-private arrangement, the FCIC began to phase out as a direct insurance provider.  Since 1998, all federal crop insurance policies in the United States have been sold and serviced by AIPs.

Under the current regulatory scheme, the FCIC is responsible for determining what crops are insurable; establishing the premium levels for the coverage; approving the AIPs who will issue and administer the policies; approving and publishing the policy types offered; establishing the

program regulations and procedures; subsidizing the premiums paid by agricultural producers; reimbursing the insurers' administrative and operating expenses; and providing reinsurance.  *See* 1 New Appleman on Insurance Law Library Edition § 56.04 (2022).  "The FCIC regulatory scheme balances the need for crop insurance as a way to promote and stabilize agriculture markets with the risk inherent in offering these policies by limiting the remedies available to claimants under the program."  *Williamson Farm v. Diversified Crop Ins. Servs.*, No. 5:17-CV-513, 2018 U.S. Dist. LEXIS 49249, *5 (E.D.N.C. Mar. 26, 2018).

WFRP is one of several plans of insurance authorized under the Act.  WFRP is relatively new, having been developed in response to a Congressional mandate in the 2014 Farm Bill to give diversified farm producers an additional option for risk management.  While more traditional plans of crop insurance provide production or revenue guarantees by unit on the farmer's individual crops, the WFRP policy provides a means for insuring the expected revenue from the entire farming operation.  The WFRP policy uses the farmer's federal tax filings (Schedule Fs) to determine both the revenue guarantee and the revenue to be counted against the guarantee.

Since its introduction for the 2015 crop year, WFRP has been in a "pilot" (i.e. testing) phase.  The Act includes a provision permitting the FCIC to conduct pilot programs for new insurance programs.  7 U.S.C. § 1523(a)(1).  Pilot programs are evaluated to determine whether they are accepted by producers as effective and affordable crop insurance coverage and to assure they are actuarially sound.  Upon completion of the pilot phase, the FCIC Board of Directors will determine if the program can become permanent.  *Id.*

### III.   SUMMARY OF THE ARBITRATION AND REVIEW PROCEEDINGS

Finneman filed for arbitration to dispute determinations rendered in connection with a WFRP policy issued to him by ProAg for the 2017 tax/policy year.  ProAg determined the policy was void because Finneman failed to identify his spouse on the application as a person with a

substantial beneficial interest ("SBI") in the insured entity.  In addition to challenging the voidance of his policy, Finneman claimed that he was entitled to a WFRP indemnity payment.  The parties selected Minneapolis attorney David A. Allgeyer to serve as arbitrator.

The voidance issue was presented to the arbitrator by way of a dispositive motion.  The arbitrator resolved this issue in favor of the insured on January 29, 2021, concluding that David and Connie Finneman were "legally separated or otherwise legally separate" for purposes of applicable (South Dakota) dissolution of marriage laws, such that Connie Finneman was not an SBI-holder.

After resolution of the SBI/voidance issue, the remaining question for the arbitrator was whether Finneman was entitled to collect indemnity under the policy and, if so, in what amount.  This issue had two disputed components: (1) expected values for the commodities reported under the policy; and (2) revenue-to-count.

Regarding expected values, there were two reported commodities: corn and safflower.  Based on local market quotes from the area where the insured intended to market these commodities, ProAg determined that the expected values were $3.00 per bushel for corn and $.15 per bushel for safflower, which were the same values initially reported on the Intended Farm Operation Report.[4]  In an amended version of the Intended Farm Operation Report, Finneman reported expected values of $3.96 per bushel for corn and $0.24 per bushel for safflower.  The arbitrator concluded that ProAg was correct in establishing expected values using local market

---

[4] The WFRP policy requires several reports over the course of the insurance cycle.  These include an Intended Farm Operation Report (submitted at the beginning of the year and reflecting the farmer's intended commodities and quantities), a Revised Farm Operation Report (generally submitted mid-summer and reflecting the farmer's actual commodities and quantities); and a Final Farm Operation Report (submitted after the insurance year and reflecting actual revenues from each commodity).

data and thus established the expected values at $3.00 per bushel for corn and $.15 per bushel for safflower, resulting in expected revenue of $134,904.  Per the arbitrator's decision, the amount of approved revenue was $134,904 and insured revenue (based on the coverage level of 75%) was $101,178.  The issue of expected values did not involve or require an interpretation of policy or procedure.

Regarding revenue-to-count, ProAg completed an Allowable Revenue Worksheet using the insured's 2017 Schedule F and determined that allowable revenue for the year of insurance was $161,771.  This amount was reported on Line 2 of the insured's Schedule F as income from the sale of grain.  ProAg made an inventory adjustment in the sum of -$26,653 (based on the Inventory Report provided with the insured's Final Farm Operation Report) and an adjustment for crop insurance indemnities received by the insured in the sum of $81,441 to arrive at revenue-to-count of $216,559.  Since revenue-to-count (as determined by ProAg) exceeded insured revenue, ProAg found that no indemnity was due.

Finneman maintained that revenue-to-count should have been established at $0, claiming that none of the commodities reported under the WFRP policy were harvested.  Finneman argued that the income reported on Line 2 of his Schedule F (as well as the crop insurance payments he received in 2017) were from crops grown by C&D Acres, LLC ("C&D"), a disregarded entity of which Finneman was the sole member.  Without citing any policy or procedure that would allow such a result, Finneman maintained that the C&D income should have been ignored for purposes of completing the Allowable Revenue Worksheet and the WFRP Claim for Indemnity.

In its arbitration submissions, ProAg noted that the calculations of allowable revenue and revenue-to-count are addressed in the WFRP policy and handbook and that there is no discretion on the part of the AIP to exclude income from a disregarded entity that is reported to the IRS on

the named insured's Schedule F (and under the named insured's tax identification number).  ProAg further cautioned that, if it was the arbitrator's finding that (despite the clarity of the policy and handbook provisions) there was any question of whether the C&D income was properly included as allowable revenue, the parties must seek an interpretation on this issue.  In addition, ProAg pointed out that the arbitrator was strictly bound to apply the contractual terms of coverage and handbook as construed by RMA and that the arbitrator was prohibited from waiving any of the terms of coverage or considering claims based in reliance, estoppel, tort, or equity.  ProAg provided the arbitrator with existing final agency determinations addressing the limits on arbitral authority.

On June 20, 2022, the arbitrator issued the award, finding that the insured's revenue-to-count was $0.  This was premised on the conclusion that the C&D income should not have been included as allowable revenue and hence revenue-to-count.  The arbitrator thus awarded indemnity in the sum of $101,178 (the amount of insured revenue) less a premium credit of $3,397, for a net indemnity of $97,781.  The arbitrator also awarded simple interest in accordance with section 34 of the WFRP policy.  *See* Ex. 2.

On July 18, 2022, ProAg sought FCIC review of the arbitration award in accordance with 7 C.F.R. § 400.766(b)(3) and (b)(4).  *See* Ex. 3.  On October 20, 2022, the FCIC responded to the review request.  *See* Ex. 4.  The agency concluded that the award <u>did</u> involve a disputed policy provision for which no interpretation had been obtained.  With its response, the FCIC also provided its interpretation of the WFRP policy, agreeing with ProAg's assertion that "revenue from the sales of animals, produce, grains, and other commodities generated by that disregarded entity are considered allowable revenue for the insured entity and must be included when calculating the

claim for indemnity of the insured entity." Ex. 4, p. 4. Finneman did not appeal the FCIC's determination or accompanying policy interpretation.

## IV.   STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate where the record discloses "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under Rule 56, the party seeking summary judgment must first inform the court of the basis for the motion, and the burden then shifts to the non-moving party to demonstrate why summary judgment would not be proper. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The non-moving party must affirmatively set forth specific facts showing a genuine issue for trial. *Id.* at 325-26. If the evidence is such that a reasonable finder of fact could return a verdict for the non-movant, there is a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, summary judgment should be granted "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, [and] there is no 'genuine issue for trial.'" *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). To avoid summary judgment, the non-moving party must establish a triable issue as to each essential element of a claim; otherwise summary judgment is mandated. *Celotex*, 477 U.S. at 322-23. "[A] complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Id.* at 323.

## V.   ARGUMENT AND AUTHORITIES

### A.   The award must be vacated because the arbitrator exceeded his powers by interpreting the policy.

In accordance with the federal policy favoring arbitration established in the FAA, judicial review of arbitration awards is "very limited" and confined to the question of whether the award should be vacated, modified, or confirmed within the statutory restrictions. *Med. Shoppe Int'l, Inc.*

*v. Turner Invs., Inc.*, 614 F.3d 485, 488-89 (8th Cir. 2010) (citing *Hall Street Associates, L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 582 (2008)).  These limited review standards apply in this instance because the underlying crop insurance contract plainly affects interstate commerce.  Courts have consistently recognized that, due to the interstate nature of the program, federal crop insurance arbitrations are governed by the FAA.  *See In re 2000 Sugar Beet Crop Ins. Litig.*, 228 F.Supp.2d 992, 995 (D. Minn. 2002) (finding that federal crop insurance contracts "involve commerce" for purposes of the FAA); *Heaberlin Farms, Inc. v. IGF Ins. Co.*, 641 N.W.2d 816, 823 (Iowa 2002) ("sale of federal crop insurance clearly has a sufficient economic nexus with interstate commerce … to invoke the [FAA]"); *Great Am. Ins. Co. v. Moye*, 733 F.Supp.2d 1298, 1302 (M.D. Fla. 2010) (listing cases).

Under the FAA, a reviewing court "must confirm an arbitration award unless it is vacated, modified, or corrected as prescribed in §§ 10 and 11."  *Med. Shoppe Int'l, Inc.*, 614 F.3d at 488. Section 10 of the FAA prescribes four exclusive grounds for vacatur.  *Id.* at 489 (citing *Crawford Group, Inc. v. Holekamp*, 543 F.3d 971, 976 (8th Cir. 2008)).  ProAg's request for vacatur is based on the last of these grounds: "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."  9 U.S.C. § 10(a)(4).

As regulator of the federal crop insurance program, the FCIC retains exclusive authority to interpret the policies and procedures utilized under the program.  As such, a federal crop insurance arbitrator cannot interpret policy or procedure.  Rather, if there is a dispute over any policy or procedural provision, the parties are required to seek an interpretation from FCIC, and the arbitrator is bound to give deference to any FCIC interpretation.  This limitation on arbitral authority is set forth in section 33(a)(1) of the WFRP Pilot Policy as follows:

(1) All disputes involving determinations made by us, except those specified in section 33(d) or (e), are subject to mediation or arbitration. However, if the dispute in any way involves a policy or procedure interpretation, regarding whether a specific policy provision or procedure is applicable to the situation, how it is applicable, or the meaning of any policy provision or procedure, either you or we must obtain an interpretation from FCIC in accordance with 7 CFR part 400, subpart X or such other procedures as established by FCIC.

    (i) Any interpretation by FCIC will be binding in any mediation, arbitration, or National Appeals Division.

    (ii) Failure to obtain, or comply with, any required interpretation from FCIC will result in the nullification of any agreement or award.

    (iii) An interpretation by FCIC of a policy provision is considered a determination that is a matter of general applicability.

    (iv) An interpretation by FCIC of a procedure may be appealed to the National Appeals Division in accordance with 7 CFR part 11.

Ex. 1, pp. 38-39.  This limitation is also carried forward in the regulations:

> Failure to request a final agency determination or FCIC interpretation when required by this subpart or failure of NAD, arbitrator, mediator, or judge to adhere to the final agency determination or FCIC interpretation provided under this subpart will result in the nullification of any award or agreement in arbitration or mediation in accordance with the provisions in the "Mediation, Arbitration, Appeal, Reconsideration, and Administrative and Judicial Review" section[5] or similar section in all crop insurance policies.

7 C.F.R. § 400.766(b)(3).

Based on the above provisions, it is well established that an award rendered in a crop insurance arbitration <u>must</u> be set aside where it is demonstrated that the arbitrator exceeded his or her powers by either (1) applying his or her own interpretation of the policy or procedure, or (2) failing to give deference to an FCIC interpretation of policy or procedure.  *See Garnett v. NAU Country Ins. Co.*, No. 5:09-CV-144, 2009 U.S. Dist. LEXIS 100140 (W.D. Ky. Oct. 27, 2009) (arbitrator applied own interpretation); *Farmers Mut. Hail Ins. Co. v. Miller*, 366 F. Supp. 3d 974 (W.D. Mich. 2018) (arbitrator applied own interpretation); *Williamson Farm v. Diversified Crop Ins. Servs.*, 917 F.3d 247 (4th Cir. 2019) (arbitrator did not adhere to existing FCIC interpretation).

---

[5] This is the title of section 33 of the WFRP Pilot Policy.

Aside from limiting the authority of the arbitrator, the FCIC has also established an administrative procedure whereby an arbitration decision may be submitted for agency review and issuance of a determination of whether an interpretation should have been sought and was not or that the decision was not in accordance with an interpretation issued by the FCIC. *See* 7 C.F.R. § 400.766(b)(4). If, upon review of the award, the FCIC determines that an interpretation should have been sought and it was not or that the award was not in accordance with an FCIC interpretation with respect to the disputed provision, "[t]he award is automatically nullified." 7 C.F.R. § 400.766(b)(4)(ii).

In this case, ProAg availed itself of the arbitration review process, and the FCIC concluded that the award involved a disputed policy provision for which an interpretation had not been requested or obtained. Specifically, the FCIC found:

> After reviewing the arbitration decision in this matter, we have determined that the decision involved a disputed policy provision. Disagreement about the disputed provision gives rise to two interpretive questions: 1) Whether the WFRP policy and handbook require revenue attributable to commodities grown by a disregarded entity to be considered as part of the insured's allowable revenue for WFRP purposes, and 2) Whether Line 2 of an insured's Schedule F income reported under a single taxpayer identification number must be entered in the Allowable Revenue Worksheet. These are questions about the meaning of policy terms. Resolving these questions is the exclusive province of FCIC, which ensures consistent implementation of the Federal Crop Insurance Program nationwide. Accordingly, an FCIC interpretation of those provisions is required by law.

Ex. 4, pp. 1-2. Along with its determination, the FCIC also issued its interpretation of the disputed policy provision, wherein it agreed with the view of the policy advanced by ProAg during the arbitration:

> FCIC agrees with the requestor's [ProAg's] interpretation. In accordance with the definitions of disregarded entity and farm operation contained in section (1) of the WFRP Pilot Policy, a disregarded entity which does not file a separate tax return is part of the farm operation of the tax entity which files a tax return including revenue from that disregarded entity and all revenue reported on Line 2 of the tax entity's Schedule F is considered allowable revenue for that tax entity. Accordingly,

revenue from the sales of animals, produce, grains, and other commodities generated by that disregarded entity are considered allowable revenue for the insured entity and must be included when calculating the claim for indemnity of the insured entity.

*Id.*, p. 4.

The FCIC interpretation is in direct conflict with the arbitrator's finding (and the entire basis for his award) that revenue from the sales of grains generated by a disregarded entity (in this case, C&D Acres, LLC) and reported on Line 2 of the Schedule F filed by the insured entity (in this case, Finneman) was not allowable revenue for the insured entity and thus was not properly included in calculating the claim for indemnity of the insured entity.[6]  The FCIC plainly concluded that, under the terms of the policy, such revenue attributable to a disregarded entity <u>must</u> be considered allowable revenue for the insured entity and thus <u>must be</u> included in calculating the insured entity's claim for indemnity.  Following the FCIC's binding interpretation, Respondent's revenue-to-count consisted of <u>all</u> allowable revenue earned by Finneman <u>and C&D</u> in 2017 (as reported on Line 2 of Finneman's Schedule F).  Thus, according to the FCIC (and based on facts that were not disputed in the arbitration proceeding), Finneman's revenue-to-count was correctly calculated by ProAg at $216,559, exceeding the insured revenue amount (as determined by the arbitrator) of $101,178.

Finneman did not appeal the arbitration review decision (as permitted by 7 C.F.R. § 400.766(b)(4)(ii)(B)), and thus FCIC's conclusion that the award of the arbitrator involved a

---

[6] As ProAg noted in its arbitration review request to the FCIC, not only did the arbitrator engage in independent policy interpretation, but he also disregarded existing FCIC interpretations by basing his award on the equitable principle of "good faith and fair dealing."  Under the existing final agency determinations cited in ProAg's review request to FCIC, an arbitrator is required to strictly follow the terms of the contract and cannot employ principles of tort or equity to waive or vary the contractual terms of coverage.  The FCIC never reached this second issue because it determined the dispute involved an issue of policy interpretation in the first instance.

disputed policy provision for which an interpretation should have been sought is final.  Based on that decision, the award is "automatically nullified" as a matter of law.

The Sixth Circuit Court of Appeals recently addressed the interplay between the FAA's vacatur provision and the FCIC's regulatory arbitration review procedure, concluding as follows:

> The upshot of this structure is clear: the FCIC can nullify an  arbitration award when an arbitrator fails to seek the interpretation required by the common policy and its accompanying regulations.  And in a timely filed action, a federal court can vacate an arbitration award under § 10(a)(4) of the FAA when the arbitrator's decision conflicts with the FCIC's views.

*Bachman Sunny Hill Fruit Farms, Inc. v. Producers Agric. Ins. Co.*, 57 F.4th 536, 543 (6th Cir. 2023).

Here, ProAg timely (within the three-month period established by 9 U.S.C. § 12) petitioned this Court for vacatur of the award.  Moreover, there is no question that, per the FCIC's arbitration review decision, the award involved a disputed policy provision for which no interpretation had been obtained, which, as a matter of law, renders the award a nullity.  Finally, the arbitration decision is in direct conflict with the FCIC's post-arbitration interpretation of the policy.  Consequently, the award must be vacated in accordance with section 10(a)(4) of the FAA.

## B.   Since the arbitrator exceeded his powers, Respondent's request for confirmation must be denied.

Respondent's counter-request to confirm the award is based on the assertion that "there is [*sic*] no grounds to vacate or otherwise nullify the subject award."  Counterclaim at ¶ 25 (ECF No. 12 at PageID.105).  As discussed above, confirmation is appropriate only where the award is not subject to vacatur or nullification.  *See Hall St. Assocs.*, 552 U.S. at 587.  ProAg has demonstrated that the arbitrator exceeded his powers (as derived from section 33(a)(1) of the WFRP Pilot Policy) by engaging in policy interpretation.  Thus, for the same reason that ProAg's request for vacatur must be granted, Respondent's counter-request for confirmation must be denied.

14

**C. Finneman's "alternative" claims for extra-contractual damages are legally barred and preempted.**

As an alternative to his confirmation request, Respondent has pled "alternative" claims for extra-contractual damages, consisting of compensatory damages of $102,366.03 and unspecified consequential damages, punitive damages, and attorneys' fees. These claims are pled under theories of judicial review, negligence, negligent misrepresentation, waiver and estoppel, and reformation. *See* Counterclaim at ¶s 28-58 (ECF No. 12 at PageID.9-17). Under federal law, Finneman is precluded from seeking or recovering extra-contractual damages absent FCIC authorization. The FCIC has declined to grant such authorization, and that decision has been upheld through the administrative appeals process. Accordingly, the extra-contractual claims must be dismissed.

Under the Supremacy Clause, Congress has authority to preempt state law. *See* U.S. Const., Art. VI, cl. 2. "When a federal law contains an express preemption clause, we 'focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' preemptive intent.'" *Chamber of Commerce of U.S. v. Whiting*, 563 U.S. 582, 594 (2011) (quoting *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664 (1993)). "[A] federal regulation has the same preemptive effect as a federal statute." *J.O.C. Farms, L.L.C. v. Fireman's Fund Ins. Co.*, 737 Fed. Appx. 652, 654 (4th Cir. 2018) (quoting *McCauley v. Home Loan Inv. Bank, F.S.B.*, 710 F.3d 551, 554 (4th Cir. 2013)). The preemptive force of a federal regulation is not dependent on the express authorization by Congress to displace state law, rather "the relevant inquiry is 'whether the [agency] meant to pre-empt [state] law, and, if so, whether that action is within the scope of the [agency's] delegated authority.'" *Id.* (quoting *Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 154 (1982)).

In establishing the federal crop insurance program, Congress empowered the FCIC "to issue such regulations as are necessary to carry out" the Act. *See* 7 U.S.C. § 1506(o). Congress also authorized the FCIC to "enter into and carry out contracts or agreements, and issue regulations, necessary in the conduct of its business, as determined by the Board." 7 U.S.C. § 1506(l). Finally, Congress provided that the FCIC's contracts and regulations would preempt state law by providing in the Act that "State and local laws or rules shall not apply to contracts, agreements, or regulations of the [FCIC] or the parties thereto to the extent that such contracts, agreements, or regulations provide that such laws or rules shall not apply, or to the extent that such laws or rules are inconsistent with such contracts, agreements, or regulations." *Id.*

As authorized under section 1506(l), the FCIC adopted 7 C.F.R. Part 400, Subpart P; it provides:

**Subpart P—Preemption of State Laws and Regulations**

**§ 400.351 Basis and applicability.**

The regulations contained in this subpart are issued pursuant to the Federal Crop Insurance Act, as amended (7 U.S.C. 1501 et seq.) (the Act), to prescribe the procedures for federal preemption of State laws and regulations not consistent with the purpose, intent, or authority of the Act. These regulations are applicable to all policies of insurance, insured or reinsured by the Corporation, contracts, agreements, or actions authorized by the Act and entered into or issued by FCIC.

**§ 400.352 State and local laws and regulations preempted.**

(a)    No State or local governmental body or non-governmental body shall have the authority to promulgate rules or regulations, pass laws, or issue policies or decisions that directly or indirectly affect or govern agreements, contracts, or actions authorized by this part unless such authority is specifically authorized by this part or by the Corporation.

(b)    The following is a non-inclusive list of examples of actions that State or local governmental entities or non-governmental entities are specifically prohibited from taking against the Corporation or any party that is acting pursuant to this part. Such entities may not:

(1)   Impose or enforce liens, garnishments, or other similar actions against proceeds obtained, or payments issued in accordance with the Federal Crop Insurance Act, these regulations, or contracts or agreements entered into pursuant to these regulations;

(2)   Tax premiums associated with policies issued hereunder;

(3)   Exercise approval authority over policies issued;

(4)   <u>Levy fines, judgments, punitive damages, compensatory damages, or judgments for attorney fees or other costs against companies, employees of companies including agents and loss adjustors, or federal employees arising out of actions or inactions on the part of such individuals and entities authorized or required under the Federal Crop Insurance Act, the regulations, any contract or agreement authorized by the Federal Crop Insurance Act or by regulations, or procedures issued by the Corporation (Nothing herein precludes such damages being imposed against the company if a determination is obtained from FCIC that the company, its employee, agent or loss adjuster failed to comply with the terms of the policy or procedures issued by FCIC and such failure resulted in the insured receiving a payment in an amount that is less than the amount to which the insured was entitled)</u>; or

(5)   Assess any tax, fee, or amount for the funding or maintenance of any State or local insolvency pool or other similar fund.

The preceding list does not limit the scope or meaning of paragraph (a) of this section.

7 C.F.R. §§ 400.351-.352 (emphasis added).

In addition to these regulations, the FCIC has also included preemption language in all insurance contracts authorized under the Act. For the WFRP policy at issue, that language is found in sections 33(f) and 37, which state:

**33.   Mediation, Arbitration, Appeal, Reconsideration, and Administrative and Judicial Review.**
…

(f)   In any mediation, arbitration, appeal, administrative review, reconsideration or judicial process, the terms of this policy, the Act, and the regulations published at 7 CFR chapter IV, including the provisions of 7 CFR part 400, subpart P, are binding. Conflicts between this policy and any state or local laws will be resolved in accordance with section

17

37.   If there are conflicts between any rules of the AAA and the provisions of your policy, the provisions of your policy will control.

Ex. 1, p. 40.

**37.   Applicability of State and Local Statutes.**

If the provisions of this policy conflict with statutes of the State or locality in which this policy is issued, the policy provisions will prevail.  State and local laws and regulations in conflict with federal statutes, this policy, and the applicable regulations do not apply to this policy.

*Id.*, p. 46.

Under its plain terms, Subpart P is "applicable to all policies of insurance, insured or reinsured by the Corporation," (7 C.F.R. § 400.351) which encompasses all policies authorized under the Act, including the subject WFRP policy (as specifically set forth in section 33(f) of the WFRP Pilot Policy).   Section 400.352(a) precludes any state or local governmental entity from enacting laws that "<u>directly or indirectly affect</u> or govern <u>agreements, contracts, or actions</u> authorized by this part unless such authority is specifically authorized by this part or by the Corporation."  (emphasis added)  This prohibition applies to any state or local laws that would directly or indirectly impact a federal crop policy.  Finally, section 400.352(b)(4) precludes the assessment of "fines, judgments, punitive damages, compensatory damages, or judgments for attorney fees or other costs against companies, employees of companies including agents and loss adjustors, or federal employees arising out of actions or inactions on the part of such individuals and entities authorized or required under the [Act], the regulations, any contract or agreement authorized by the [Act] or by regulations, or procedures issued by the Corporation" unless "a determination is obtained from FCIC that the company, its employee, agent or loss adjuster failed to comply with the terms of the policy or procedures issued by FCIC and such failure resulted in the insured receiving a payment in an amount that is less than the amount to which the insured was

entitled." Thus, according to Subpart P, the only manner by which an AIP can be assessed with extra-contractual damages in connection with the issuance or administration of a federal crop insurance policy is if the farmer obtains preauthorization (in the form of an express determination of non-compliance) from the FCIC.

At the time the current preemption regulations were enacted in 2004, the FCIC considered completely preempting extra-contractual damages in connection with reinsured policies but chose to limit the imposition of such damages to those situations where, in FCIC's judgment, the insurer or its agent or adjuster violated federal policy or procedure in the sale or servicing of the policy. In other words, the FCIC exercised its regulatory authority to function as a "gatekeeper" to the courthouse with respect to claims for extra-contractual damages. The FCIC explained its reasoning during the public comment phase of the rulemaking process:

> Comment: A commenter stated that the proposed language does not address insurance provider determinations at all, and specifically, it does not provide any protection to the insurance provider from punitive or extra contractual damages because it only applies to appeal or administrative reconsiderations, not ''legal actions'' against insurance providers.
>
> Response: FCIC agrees that insurance providers may have been at risk for punitive or extra contractual damages in litigations even though they may not have violated FCIC's policies or procedures. This risk poses a considerable program integrity issue[7] since it can affect the manner in which insurance providers manage their litigations and could result in increased costs to taxpayers. Therefore, FCIC has

---

[7] Punitive and other extra-contractual damages impact program integrity because, unlike traditional state-regulated lines of insurance, federal crop insurance premiums are not expense loaded. That is, the premium, which is federally subsidized, does not include any factor above actuarially determined loss costs (as calculated by FCIC) that would otherwise be used to compensate a company for its delivery (including agent commissions) and service costs. FCIC also allows payment of an A&O Subsidy for policies that are sold and serviced in accordance with FCIC procedure and directives. A&O is defined in the SRA as "the subsidy for the administrative and operating expenses paid by FCIC on behalf of the policyholder to the Company for additional coverage level eligible crop insurance contracts in accordance with section 508(k)(4) of the Act…" The A&O Subsidy likewise does not factor in extra-contractual damages.

19

revised section 20[8], and made conforming amendments to 7 CFR 400.176(b)[9] and 400.352(b)(4), to limit the imposition of punitive and other extra contractual damages, attorneys fees and other costs to those situations where FCIC has determined the insurance provider violated its policies and procedures and such violation had a monetary impact on the payment of the claim. FCIC will be making the determinations because, as authors of the policy or procedure, FCIC is in the best position to know whether an action constitutes a violation and to ensure the uniform application of the policies and procedures.

69 Fed. Reg. 48652, 48717 (Aug. 10, 2004).

Upon enactment of these regulatory amendments, the FCIC also added language to many of its common policy forms permitting the FCIC to issue a non-compliance determination to authorize the pursuit of extra-contractual damages.[10]  However, the FCIC did <u>not</u> include in the 2017 WFRP Pilot Policy a provision allowing the recovery of extra-contractual damages or permitting the FCIC to issue a non-compliance determination to authorize pursuit of such damages. Section 33(h) of the 2017 WFRP Pilot Policy expressly limits recovery to <u>contractual</u> indemnities

---

[8] This reference is to section 20 of the Common Crop Insurance Policy ("CCIP"), published at 7 C.F.R. § 457.8.  The CCIP is the foundational policy form for the more traditional crop-specific revenue protection and yield protection policies offered under the federal crop insurance program. Section 20 of the CCIP is the equivalent of section 33 of the WFRP Pilot Policy.

[9] When the current preemption regulation was adopted and implemented under Subpart P, the FCIC also revised 7 C.F.R. § 400.176(b) to include language almost identical to that found at 7 C.F.R. § 400.352(b)(4).  Due to this redundancy, the agency later eliminated Section 400.176.  *See* 83 Fed. Reg. 51301 (Oct. 11, 2018).

[10] An example of such language is found in section 20(i) of the CCIP; it states: "In a judicial review only, you may recover attorneys fees or other expenses, or any punitive, compensatory or any other damages from us only if you obtain a determination from FCIC that we, our agent or loss adjuster failed to comply with the terms of this policy or procedures issued by FCIC and such failure resulted in you receiving a payment in an amount that is less than the amount to which you were entitled.   Requests for such a determination should be addressed to the following: USDA/RMA/Deputy Administrator of Compliance/Stop 0806, 1400 Independence Avenue, S.W., Washington, D.C. 20250-0806.

and simple interest, with no provision or exception under which a farmer may seek extra-contractual relief:

> (h)   Except as provided in section 33(i), no award or settlement in mediation, arbitration, appeal, administrative review or reconsideration process or judicial review can exceed the amount of insured revenue established or which should have been established under the policy, except for interest awarded in accordance with section 34.

Ex. 1, p. 40.

Finneman requested the FCIC's Deputy Administrator of Compliance to issue a non-compliance determination for the purpose of allowing him to pursue claims for extra-contractual damages against ProAg in accordance with Subpart P. *See* Ex. 5. Specifically, Respondent (through his attorney) sought, "pursuant to §33 of the WFRP Policy and 7 CFR §400.352(b)(4), and applicable federal regulations," a "determination that approved insurance provider (AIP) Producers Agriculture Insurance Company failed to comply with the terms of my client's 2017 federally reinsured crop insurance policy and the procedures of the Federal Crop Insurance Corporation (FCIC), resulting in my client's receiving payment in an amount less than the amount to which he was entitled." *Id.*

On October 31, 2022, the FCIC Office of Compliance issued a determination that the 2017 WFRP Pilot Policy does not allow for issuance of a non-compliance determination:

> You sought a determination from the Deputy Administrator of Compliance (DAC) that Producers Agriculture Insurance Company failed to comply with the terms of the 2017 WFRP Policy and applicable Federal Crop Insurance Corporation procedures, that resulted in you receiving payment in an amount less than you were entitled to receive.
>
> Regretfully, the 2017 WFRP Policy, which the arbitration was based on, does not have a contract provision that authorizes the DAC to provide such a determination. As a result, the DAC cannot issue a determination for this case. If you intend to pursue judicial review, you must do so without a determination from the DAC.

Ex. 6.

Respondent appealed FCIC's decision to the USDA's National Appeals Division.[11]  The case was assigned to Administrative Judge Ryan M. Eagleson.  On February 22, 2023, Judge Eagleson issued a determination upholding FCIC's decision.  *See* Ex. 7.  Judge Eagleson began by noting that pursuant to Subpart P, "'State or local governmental entities or non-governmental entities are specifically prohibited from . . . Levy[ing] fines, judgments, punitive damages, compensatory damages, or judgments for attorney fees or other costs against companies, employees of companies including agents and loss adjustors,'" … "but such judgments or damages are allowed if 'specifically authorized' by RMA."  *Id.* at 4 (internal citations omitted).  The Administrative Judge next found that some reinsured crop insurance policies contain provisions allowing farm producers, "during a judicial review, to pursue damages against the AIP if the producer obtained specific authorization from RMA in the form of a determination that the AIP failed to comply with the insurance policy or RMA procedures, and the AIP's non-compliance caused the insured to receive a lower payment."  *Id.* at 4-5.  The Administrative Judge found that, unlike certain other contracts, the 2017 WFRP Pilot Policy "generally limited awards to 'the amount of insured revenue established or which should have been established under the policy,' plus allowable interest" and "did not call on RMA to determine whether [ProAg] failed to comply and whether such non-compliance caused the Appellant to receive a lower payment."  *Id.* at 5.  Finally, Judge Eagleson found "no evidence of fraud, mistake, or misapprehension that would warrant rewriting the contract" to include language authorizing a non-compliance determination.

---

[11]  NAD is an independent office within USDA, which reports directly to the Secretary of Agriculture.  *See* 7 U.S.C. § 6992.  NAD hears appeals of adverse decisions rendered against beneficiaries of several federal programs, including the federal crop insurance program.

*Id.* at 6.  "Therefore, RMA properly declined to issue a non-compliance determination allowing [Finneman] to pursue extracontractual damages against [ProAg]."  *Id.*

Respondent appealed Judge Eagleson's decision to the NAD Director, Frank M. Wood. On April 25, 2023, Director Wood affirmed the Administrative Judge's appeal determination, finding: "Appellant's 2017 WFRP pilot policy simply has no provision for RMA to determine whether the AIP failed to comply, nor does it have a provision to determine whether such non-compliance caused Appellant to receive a lower payment.  Accordingly, RMA properly declined to issue a non-compliance determination allowing Appellant to pursue extracontractual damages against [ProAg]."  Ex. 8.  The Director's decision constitutes a final order of the Department of Agriculture and establishes that Finneman cannot meet the regulatory "condition precedent" for seeking extra-contractual damages against ProAg.[12]

In addition to declining to issue a non-compliance determination in this case, the FCIC has consistently recognized through prior final agency determinations that, absent the requisite non-compliance determination, all claims for extra-contractual damages premised on claim handling and other aspects of policy administration are barred and preempted.  In FAD-240 (Ex. 9), the FCIC emphasized that "to the extent that State law would allow a claim for extra-contractual damages, such State law is pre-empted and extra-contractual damages can only be awarded if FCIC makes a determination that the AIP, agent or loss adjuster failed to comply with the terms of the

---

[12] As noted in the introduction, Finneman recently asked this Court to overturn the FCIC's adverse decision under the Administrative Procedures Act, claiming the agency's refusal to render a determination of non-compliance in connection with the 2017 WFRP Pilot Policy was "arbitrary and capricious," "contrary to controlling law," and "unsupported by substantial evidence."  *See* Complaint in *Finneman v. USDA*, Case No. 5:23-cv-5034-KES (D.S.D.) at ¶ 46 (PageID # 9-10). These same issues were previously presented to, and rejected by, both Judge Eagleson and the NAD Director.  Finneman has identified no legal authorities or new arguments that would support a different outcome at the district court level.

policy or procedures issued by the Corporation and such failure resulted in the insured receiving a payment in an amount that is less than the amount to which the insured was entitled."  Similarly, in FAD-251 (Ex. 10), the FCIC noted "that 7 C.F.R. § 400.352 pre-empts any State law that would allow a claim for extra-contractual damages that conflicts with the provision in section 400.352 that any extra-contractual damages can only be awarded if FCIC makes a determination that the AIP, agent, or loss adjuster failed to comply with the terms of the policy or procedures issued by FCIC.  To the extent that State courts award extra-contractual damages without first obtaining a determination from FCIC, such awards are not in accordance with 7 C.F.R. § 400.352 and FCIC regulations."  In FAD-280 (Ex. 11), the FCIC reiterated that the policy and other regulatory provisions governing the crop insurance program preempt any state law claims in conflict therewith.  "That means that to the extent that State law would allow a claim for extra-contractual damages, such State law is pre-empted and extra-contractual damages can only be awarded if FCIC makes a determination that the AIP, agent or loss adjuster failed to comply with the terms of the policy or procedures issued by the Corporation and such failure resulted in the insured receiving a payment in an amount that is less than the amount to which the insured was entitled.  Therefore, this means that state law claims may be possible but recovery of extra-contractual damages is limited and the determination from FCIC must first be obtained."  *See also* FAD-282 (Ex. 12) (noting that courts are authorized to award attorney's fees, expenses, or compensatory, punitive, or other extra-contractual damages "only if" the requisite determination is first obtained).

Courts construing Subpart P and the preauthorization requirement in the wake of the above FADs have also consistently recognized that the failure to obtain FCIC preauthorization extinguishes any claim for extra-contractual damages involving, arising from, or related to the AIP's administration of a federal crop insurance policy.

*Zych v. Haugen*, 2017 Minn. App. Unpub. LEXIS 645 (2017) involved a farmer's suit against the agent who had sold him a federal crop insurance policy.  The agent was charged with "negligent handling of the claims by failing to file a Notice of Loss with [the AIP] and provid[ing] misleading and inaccurate information to" the insured.  *Id.* at *3.  The trial court granted a motion for judgment on the pleadings, finding that the negligence claim fell within the scope of Subpart P and that the plaintiff had failed to obtain the requisite FCIC preauthorization to pursue this claim. Id. at *3-4.  The Minnesota Court of Appeals agreed and affirmed the dismissal, noting that: "Appellant's negligence claim against respondents is a request for the district court to levy a judgment for damages, costs, and disbursements against respondents, agents of an insurance company, for their actions and inactions regarding a crop insurance policy governed by the FCIA. That claim is preempted under the plain language of 7 C.F.R. § 400.352(a), (b)(4)."  *Id.* at *10.

In *J.O.C. Farms, L.L.C. v. Fireman's Fund Ins. Co.*, 737 Fed. Appx. 652 (4th Cir. 2018), the Fourth Circuit Court of Appeals similarly concluded that, pursuant to Subpart P, FCIC preauthorization was a necessary condition to seeking any form of compensatory or punitive damages against an AIP in connection with its claim handling and affirmed the dismissal of an insured's state law claims:

> We conclude the district court properly dismissed these state law claims in reliance on these contract and regulatory provisions.  While the FCIA and FCIC regulations were not intended to completely foreclose state law claims against private insurers providing policies reinsured by the FCIC, we agree with the weight of recent authority recognizing that claims arising from an insurer's determination under the policy are preempted.  The authority on which JOC relies is inapposite, given that it relied on earlier versions of the regulations that included language more readily admitting state law determinations of such claims.

*Id.* at 656 (internal citations omitted).

In *Sunset Ranches v. NAU Country Ins. Co.*, 2021 Cal. App. Unpub. LEXIS 5249 (Cal. App. 5th Dist. Aug. 16, 2021), the insured sued its AIP for breach of contract, negligence, and

unfair insurance practices/bad faith.  *Id.* at *13-16.  The case was then stayed to allow arbitration.  *Id.* at *16.  The arbitrator considered only the issue of contractual liability and found in favor of the AIP.  *Id.* at *18.  Following arbitration, the stay was lifted.  The trial court confirmed the arbitration award and because the insured failed to obtain FCIC preauthorization to pursue extra-contractual damages, granted a summary adjudication in favor of the AIP on the tort claims.  *Id.* at *21-22.  The California Court of Appeals affirmed, finding that the insured [Sunset] "was required to obtain a determination from the Federal Crop Insurance Corporation before it could recover damages, fees, or other expenses in court.  It is uncontroverted that [Sunset] failed to do so.  Therefore, the causes of action for negligence and unfair insurance practices were preempted.  Accordingly, we affirm the court's order granting summary adjudication as to these claims."  *Id.* at *35-36 (internal quotations and citations omitted).

In another recent case, *Mibelloon Dairy, LLC, v. Producers Agriculture Ins. Co.*, 2021 U.S. Dist. LEXIS 251982 (W.D. Mich. Nov. 30, 2021), a policyholder sued its AIP for breach of contract, negligence and misrepresentation.  The district court found that the "state law claims, which arise from [the AIP's] failure to issue endorsements … to [plaintiff's] … insurance policy are preempted by federal law set forth at 7 C.F.R. § 400.352."  *Id.* at *25.  Since the insured failed to obtain FCIC preauthorization to pursue these state law claims, the district court entered summary judgment in the AIP's favor.  *Id.* at * 25-26.  *See also Williamson Farm v. Diversified Crop Ins. Servs.*, 2018 U.S. Dist. LEXIS 49249 * 17 (E.D.N.C. March 26, 2018) (finding that extra-contractual damages may be pursued in a court action only after an FCIC determination has been obtained); *Wanamaker Nursery, Inc. v. John Deere Risk Prot., Inc.*, 364 F. Supp. 3d 839, 849 (E.D. Tenn. 2019) (granting summary judgment in favor of AIP on tort claim because the insureds failed to obtain FCIC preauthorization).

The preemption regulations set forth in Subpart P of the regulations apply to the WFRP policy in question (as plainly stated in section 33(f) of the WFRP Pilot Policy).  These regulations bar any form of extra-contractual relief stemming from claims handling or other acts of policy administration <u>unless</u> the farmer first obtains a determination of non-compliance from the FCIC. As recognized both by the FCIC and NAD, the 2017 WFRP Pilot Policy makes no provisions for the issuance of a non-compliance determination and expressly limits a farmer's remedies in arbitration, judicial review or any other "judicial process" to contractual indemnities and simple interest.  Consequently, Respondent's "alternative" claims for extra-contractual damages are barred under federal law and must be dismissed with prejudice.

## VI.   CONCLUSION

As shown herein, ProAg's request for vacatur of the arbitration award should be granted, and Respondent's request for confirmation of the award should be denied.  In addition, the "alternative" claims for extra-contractual damages set forth in Respondent's Counterclaim are barred and preempted under federal law.  Accordingly, ProAg respectfully prays for entry of summary judgment granting its petition for vacatur and denying and dismissing the Counterclaim with prejudice.  ProAg further prays for such other, general relief to which it may be entitled.

Dated: September 21, 2023                Respectfully submitted,

SIEGEL, BARNETT & SCHUTZ, L.L.P.

*/s/ Reed Rasmussen*
Reed Rasmussen
415 S. Main Street, Suite 400
PO Box 490
Aberdeen, SD  57402-0490
Telephone No. (605) 225-5420
Facsimile No. (605) 226-1911
rrasmussen@sbslaw.net

- AND -

Jeffrey S. Dilley
Henke-Bufkin Law Firm, P.A.
P.O. Box 39
Clarksdale, MS 38614
Telephone:  (662) 624-8500
Facsimile:  (662) 624-8040
E-mail:  jsd@henke-bufkin.com

***Attorneys for Producers Agriculture
Insurance Company***