IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| PRODUCERS AGRICULTURE INSURANCE COMPANY,<br><br>        Petitioner,<br><br>v.<br><br>DAVID FINNEMAN,<br><br>        Respondent. | CASE NO.: 5:22-cv-05062-KES |

**PRODUCERS AGRICLUTURE INSURANCE COMPANY'S
RESPONSE/REPLY BRIEF ON PENDING
<u>SUMMARY JUDGMENT MOTIONS</u>**

      COMES NOW the Petitioner, Producers Agriculture Insurance Company ("ProAg"), and submits the following brief in reply to David Finneman's response to ProAg's motion for summary judgment and response to Finneman's cross-motion for summary judgment.

**I.    INTRODUCTION**

      The parties are in agreement that there are no disputed issues of material fact[1] and the issues presented under the competing motions for summary judgment are purely legal. The legal issues before the Court are: (1) Should the arbitration decision be confirmed or set aside? (2) May Finneman proceed with his "alternative" claims for extra-contractual relief absent a non-compliance determination from the Federal Crop Insurance Corporation ("FCIC").

---

[1] In accordance with D.S.D. Civ. LR 56.1, each side has submitted a statement of material facts as to which it/he claims there is no genuine issue. With some minor quibbles (adding facts for context or questioning the summarization or characterization of documents), each has admitted the <u>material</u> facts set forth by the other.

As to question number one, the arbitration decision must be set aside because it is a legal nullity. This nullification is a result of the arbitration review decision rendered by the FCIC on October 22, 2022—in which it was determined that the award involved a disputed policy provision for which no interpretation was issued. As Finneman did not appeal the arbitration review decision, the same is final and renders the award "automatically nullified" under 7 C.F.R. § 400.766(b)(4)(ii)(A). Contrary to Finneman's arguments, the arbitrator did not have discretion to interpret the policy or decide whether an interpretation was needed in the first place. Such discretion is reserved exclusively to the FCIC. The FCIC has decided both that the case involved an issue for which an interpretation was required <u>and</u> that the interpretation utilized by the arbitrator in fashioning the award was incorrect. This is the end of the matter and requires that the award be set aside.

Regarding question number two, the law explicitly requires an FCIC non-compliance determination as a condition precedent to a policyholder's pursuit of **any** extra-contractual damages against the approved insurance provider in relation to actions or omissions arising from policy administration or claim handling. The FCIC declined to issue such a determination, and Finneman was unsuccessful in challenging that refusal through administrative channels. Finneman has now filed a separate action against the FCIC in this Court (the "APA action"), appealing the FCIC's refusal to issue such a determination as arbitrary and capricious. Unless and until Finneman prevails in the APA action, he cannot pursue extra-contractual damages against ProAg herein. Moreover, such claims have been expressly pled "in the alternative" to the contractual claims decided by way of the nullified arbitration decision. Consequently, these "alternative" claims should be dismissed without prejudice pending further arbitration proceedings and disposition of the APA action.

## II.   ARGUMENT AND AUTHORITIES

### A.   The FCIC's arbitration review decision is final and binding; based thereon, the award is null and must be set aside.

That the arbitrator exceeded his authority by engaging in policy interpretation cannot be disputed because the FCIC has already made that determination. Incredibly, Finneman makes no mention in his brief of the FCIC's arbitration review decision, even though the effect of that decision was to render the award "automatically nullified."

To briefly recap, the critical issue[2] in the arbitration was whether 2017 income attributable to C&D Acres, LLC (a "disregarded entity" whose income was reported on Finneman's personal tax return) was properly included as revenue-to-count for purposes of Finneman's WFRP claim for indemnity. This issue alone is determinative of whether Finneman qualifies for an indemnity because the C&D revenue in 2017 ($161,771) significantly exceeds the insured revenue amount ($101,178). (Recall that an indemnity is the difference (if positive) between insured revenue and revenue-to-count.)

By including the C&D revenue (as reported on Finneman's Schedule F) in the claim calculations, ProAg concluded that revenue-to-count was $216,559, calculated as follows:

---

[2] As explained in ProAg's initial brief, there were two other issues presented to the arbitrator that have no bearing on these proceedings. First, the arbitrator determined that David Finneman's failure to identify his spouse, Connie Finneman, on the application as a person with a substantial beneficial interest did not render the policy void, concluding that the Finnemans were "legally separated" under South Dakota law at the time the application was submitted. Second, the arbitrator found that the expected values for the commodities of corn and safflower, as determined by ProAg, correctly reflected what Finneman could have expected to receive on the local market. As expected values were a component of the coverage amount, the determination regarding expected values established the amount of insured revenue at $101,178 (expected revenue of $134,904 multiplied by the coverage level of 75%). In both instances, the arbitrator acted within the scope of his authority. Thus, neither of these determinations has been challenged by either party.

| | |
|---|---:|
| Allowable Revenue (Line 2 of Sch. F) | $161,771 |
| Inventory Adjustment | -26,653 |
| 2017 Crop Insurance Payments (C&D) | <u>81,441</u> |
| Revenue-to-Count | $216,559 |

As revenue-to-count exceeded the insured revenue amount of $101,178, ProAg determined that no indemnity was due under the policy.

Finneman maintained that revenue-to-count should have been established at $0, claiming that none of the commodities reported under the WFRP policy were harvested. Finneman argued that the income reported on Line 2 of his Schedule F as well as the crop insurance payments he received and reported on his 2017 taxes were from crops grown by C&D. Without citing any policy or procedure that would allow such a result, Finneman maintained that the C&D income should have been ignored for purposes of calculating the claim for indemnity.

In its arbitration submissions, ProAg noted that the calculations of allowable revenue and revenue-to-count are addressed in the WFRP policy and handbook and that there is no discretion on the part of the AIP to exclude income from a disregarded entity that is reported to the IRS on the named insured's Schedule F (and under the named insured's tax identification number). ProAg further cautioned that, if it was the arbitrator's finding that (despite the clarity of the policy and handbook provisions) there was any question of whether the C&D income was properly included as allowable revenue, the parties must seek an interpretation on this issue. In addition, ProAg pointed out that the arbitrator was strictly bound to apply the contractual terms of coverage and handbook as construed by FCIC and that the arbitrator was prohibited from waiving any of the terms of coverage or considering claims based in reliance, estoppel, tort, or equity. ProAg provided the arbitrator with existing final agency determinations addressing the limits on arbitral authority.

The arbitrator sided with Finneman and determined that insured's revenue-to-count was $0 and thus awarded indemnity in the sum of $101,178 (the amount of insured revenue) less a premium credit of $3,397, for a net indemnity of $97,781. In so ruling, the arbitrator concluded that the principle of "good faith and fair dealing" dictated that revenue from commodities not insured for WFRP purposes (but insured under separate federal crop insurance policies issued to C&D) should not be counted against an insurance guarantee when the guarantee did not take into account the expected revenue from the commodities produced by C&D.[3] Instead of abiding by the requirements of the policy and obtaining (and deferring to) an FCIC interpretation of the policy where needed, the arbitrator relied on the implied covenant of "good faith and fair dealing" to find that, because (according to the insured's affidavit) the agent allegedly assured him that he could separately insure the C&D operation and omit the C&D revenue from his "personal" WFRP policy, it would not be "fair" to include C&D crop proceeds as revenue-to-count. In so doing, the arbitrator interpreted the policy and handbook—despite repeatedly being advised by ProAg's counsel that issues of policy or procedure interpretation must be resolved by the FCIC and that, if the arbitrator believed there to be any ambiguities in the policy or handbook, the parties should be directed to obtain the necessary FCIC interpretation. In addition, the arbitrator disregarded existing final agency determinations that prohibit an arbitrator from considering equitable or other

---

[3] The fact that Finneman insured the C&D commodities under separate policies did not preclude Finneman from also insuring the expected revenue from these commodities under his WFRP policy. Indeed, because the WFRP policy is based on tax filings and the C&D income was included on Finneman's Schedule F and the historic tax records which established the income history on which certain WFRP calculations are based included historic farm income from C&D, Finneman should have included expected revenue from the C&D commodities on his Farm Operation Reports. Because he failed to do so, the expected C&D revenue was not insured. Nevertheless, the policy dictates that all income included on the named insured's Schedule F shall be included for claim calculation purposes.

common law claims, as the effect of such would be to waive, modify or change the policy provisions.[4]

As a result, ProAg availed itself of the review procedure set forth at 7 C.F.R. § 400.766(b)(4), which states:

> If either party believes an award or decision was rendered by NAD, arbitrator, mediator, or judge based on a disputed provision in which there was a failure to request a final agency determination or FCIC interpretation or NAD, arbitrator, mediator, or judge's decision was not in accordance with the final agency determination or FCIC interpretation rendered with respect to the disputed provision, the party may request FCIC review the matter to determine if a final agency determination or FCIC interpretation should have been sought in accordance with § 400.767.

In response to ProAg's request (and Finneman's response thereto), the FCIC concluded that the arbitration decision rendered by Mr. Allgeyer involved a disputed policy provision for which an interpretation had not been requested or obtained, stating:

> After reviewing the arbitration decision in this matter, we have determined that the decision involved a disputed policy provision. Disagreement about the disputed provision gives rise to two interpretive questions: 1) Whether the WFRP policy and handbook require revenue attributable to commodities grown by a disregarded entity to be considered as part of the insured's allowable revenue for WFRP purposes, and 2) Whether Line 2 of an insured's Schedule F income reported under a single taxpayer identification number must be entered in the Allowable Revenue Worksheet. These are questions about the meaning of policy terms. Resolving these questions is the exclusive province of FCIC, which ensures consistent implementation of the Federal Crop Insurance Program nationwide. Accordingly, an FCIC interpretation of those provisions is required by law.

---

[4] In prior regulatory interpretations (known as Final Agency Determinations, or FADs), the FCIC has consistently recognized that arbitrators can only review contract claims and must eschew applying not only equity but any other common law principles that would override or render the policy provisions inapplicable. Regardless of whether "good faith and fair dealing" is considered a principle of equity in the strict sense, it is a common law concept used by the arbitrator to avoid application of the policy terms.

Arbitration Review Decision at 1-2 (ECF No. 20-4 at PageID.337-338). With this determination the FCIC issued its interpretation of the disputed policy provision, wherein it agreed with the view of the policy advanced by ProAg during the arbitration:

> FCIC agrees with the requestor's [ProAg's] interpretation. In accordance with the definitions of disregarded entity and farm operation contained in section (1) of the WFRP Pilot Policy, a disregarded entity which does not file a separate tax return is part of the farm operation of the tax entity which files a tax return including revenue from that disregarded entity and all revenue reported on Line 2 of the tax entity's Schedule F is considered allowable revenue for that tax entity. Accordingly, revenue from the sales of animals, produce, grains, and other commodities generated by that disregarded entity are considered allowable revenue for the insured entity and must be included when calculating the claim for indemnity of the insured entity.

*Id.* at 4 (ECF No. 20-4 at PageID.340).

Because Finneman did not appeal the arbitration review decision (as permitted by 7 C.F.R. § 400.766(b)(4)(ii)(B)), the FCIC's conclusion that the award of the arbitrator involved a disputed policy provision for which an interpretation should have been sought is final. Likewise, the arbitrator's decision was not in accordance with the FCIC interpretation rendered following the conclusion of arbitration. Consequently, the award is deemed "automatically nullified" in accordance with 7 C.F.R. § 400.766(b)(4)(ii)(A).

As noted, Finneman completely ignores the FCIC's arbitration review decision and policy interpretation. Instead, Finneman focuses on *A.W.G. Farms v. Federal Crop Ins. Corp.*, 757 F.2d 720 (8th Cir. 1985), on which the arbitrator relied in invoking the doctrine of good faith and fair dealing. *See* Finneman's Brief at 7 (ECF No. 26 at PageID.499) ("[A]s is clear from the award, Arbitrator Allgeyer applied not only the terms of the policy but also controlling legal authority from the Eighth Circuit Court of Appeals in reaching his conclusion.") The *A.W.G. Farms* case has nothing to do with arbitral authority. In fact, that case stems from an earlier era when the FCIC was still directly issuing policies to farmers.

7

The plaintiffs in *A.W.G. Farms* (a group of sugar beet growers) sued the FCIC in federal district court, seeking contractual indemnities they claimed were due under their policies. *A.W.G. Farms, Inc.*, 757 F.2d at 726. The policy language at issue in *A.W.G. Farms* provided two means for assessing the amount of loss to sugar beets: the beets could be tested by the processor upon delivery or, if the beets were not deemed acceptable by the processor, they could be appraised by the federal government. *Id.* at 723. After the plaintiffs submitted notification of losses caused by a freeze, the FCIC instructed the growers to deliver their beets to the processors. *Id.* at 724. Later, however, the FCIC took the position that the growers had waived their right to have losses appraised by the government because the beets had been delivered to processors. *Id.* at 726-27. The growers argued that this coverage position was untenable because they had delivered the beets for processing based on the FCIC's express instructions. The court of appeals agreed, finding:

> The record contains material evidence indicating that the FCIC, in its transactions with the growers throughout this ordeal, have succeeded in leading the growers down a primrose path, which would ultimately defeat their claim for indemnity. FCIC agents allegedly advised the growers to harvest their freeze-damaged beets and to deliver them to their processor. A FCIC official also informed the growers that the computation of indemnity would have to await the completion of processing. Then, after previously assuring the growers their losses were covered by their crop insurance policy, the FCIC refused to indemnify the growers for the major portion of their losses. While we do not hold the government liable under an estoppel theory, the factual background regarding the FCIC's course of dealing with these growers must be considered under basic principles of good faith and fairness. One may have to turn "square corners" when dealing with a governmental entity, but this does not mean the government may operate so recklessly so as to put parties dealing with it entirely at its mercy.

*Id.* at 728-29 (internal citations omitted).

Thus, in *A.W.G. Farms*, the Eighth Circuit found that the growers had been misled by the FCIC and the FCIC could not use the fruits of that deception to deny indemnity. Importantly, this ruling was not made in the context of an arbitration (wherein an arbitrator would be restricted from stepping outside the contractual limitations on coverage or interpreting the policy) but in an

8

original court action (in which there were no such limitations on the court's authority to settle the dispute). The *A.W.G. Farms* case thus has nothing whatsoever to do with limitations on arbitral authority.

Finneman also cites *Balvin v. Rain & Hail, LLC*, 943 F.3d 1134 (8th Cir. 2019) and maintains that case is "highly instructive" to the current scenario. It is not. While *Balvin* did stem from a petition (by a farmer) to set aside an arbitration decision based on the arbitrator having allegedly exceeded his powers by engaging in policy interpretation, the similarities between that case and this one end there. In *Balvin*, the policyholder did not raise an issue of whether an interpretation of the policy term "appraised value" was needed until after the arbitration was concluded. The Eighth Circuit concluded that "[a]n arbitrator has not exceeded his powers where neither party suggested that a term of the policy was subject to interpretation, but the interpretation dispute instead arose after the arbitration proceedings." *Balvin*, 943 F.3d at 1137-38. Such is not the case here. ProAg repeatedly cautioned the arbitrator that, if it was the arbitrator's finding that (despite the clarity of the policy and handbook provisions) there was any question of whether the C&D income was properly included as allowable revenue, an interpretation on this issue was mandated under section 33(a)(1) of the WFRP Pilot Policy.

Even more important than this factual distinction, the current regulatory scheme allowing for FCIC review and nullification was not in effect at the time the *Balvin* dispute was arbitrated, as the court of appeals acknowledged in a footnote: "[A]ccording to a **new** FCIC regulation, if either party to an arbitration 'believes an award or decision was rendered by . . . [an] arbitrator . . . based on a disputed provision in which there was a failure to request a final agency determination or FCIC interpretation . . . the party may request FCIC review the matter to determine if a final agency determination or FCIC interpretation should have been sought.'" *Id.* at 1137 n. 1 (emphasis

9

added) (quoting 7 C.F.R. § 400.766(b)(4)).  The "new" rendition of Subpart X providing for FCIC review of arbitration awards was not enacted until December 27, 2018, well after the arbitration award against Balvin had been appealed to the district court.

In this instance, not only did the arbitrator engage in policy interpretation (under protest by ProAg), but the FCIC has reviewed the award and confirmed that the case involved an issue for which an interpretation was required but not obtained.  In addition, the arbitrator's interpretation of the policy and resulting award was inconsistent with the FCIC's post-arbitration interpretation.  Finally, the FCIC decision on review was not challenged on appeal by Finneman, making that decision final and binding.  Therefore, by virtue of 7 C.F.R. § 400.766(b)(4)(ii)(A), the arbitration decision is "automatically nullified" as a matter of law.  This Court must give effect to the FCIC's decision and vacate the award.  Conversely, because the arbitrator clearly exceeded his powers by rendering an award in direct conflict with the FCIC's policy interpretation, Finneman's request for confirmation must be denied.

> **B.** **ProAg agrees that further arbitration proceedings are necessary.**

As an alternative to his request for confirmation, Finneman asserts that, "if this Court grants ProAg its vacatur or 'automatic nullification,' the matter must necessarily be remanded to Arbitrator Allgeyer to make his findings in light of the FCIC guidance provided."  Finneman Brief at 10 (ECF No. 26 at PageID.502).  Based on section 33(a) of the WFRP Pilot Policy (requiring that all disputed determinations be submitted to arbitration), and given that the arbitration decision is null, further arbitration proceedings are necessary.  Accordingly, it would be appropriate for the Court's order setting aside the award to also include a directive to arbitrate before Mr. Allgeyer or, if he is unwilling or unable to serve in that capacity, another arbitrator to be agreed to by the parties.

### C. Absent an FCIC non-compliance determination, Finneman's remaining claims are legally barred and preempted.

With respect to the causes of action presented by counterclaim as alternatives to the request for confirmation, Finneman maintains that FCIC preemption is strictly limited to the judicial review claim (Count II) and does not extend to his state law causes of action (Counts III through VI). As will be discussed, this is simply not true. Preemption extends to all contract and tort claims that arise from the approved insurance provider's determinations. Thus, Finneman cannot pursue any of the claims set forth in Counts II through VI without authorization (in the form of a determination of non-compliance) from the FCIC.

The FCIC has already concluded that the 2017 WFRP Pilot Policy does not permit the issuance of a non-compliance determination. That finding was upheld on administrative appeal to the National Appeals Division ("NAD"), and Finneman has now filed an APA action in this Court challenging the findings of the FCIC and NAD. Were the district court to conclude that the FCIC was in error, the matter would then go back to the FCIC for issuance of a decision on the merits. Even then, FCIC would still have to issue the requisite non-compliance determination (i.e. a finding that ProAg failed to comply with policy or procedure resulting in Finneman receiving indemnity in an amount less than that to which he was entitled)[5] before Finneman could proceed with his judicial review and state law claims. In addition, the claims set forth in Counts II through VI are presented by way of alternative relief to the claims made in arbitration, and as noted, further arbitration proceedings will be required. Unless and until Finneman both (1) completes the arbitration process and (2) is able to successfully clear the judicial and jurisdictional hurdles

---

[5] In order to do so, the FCIC would have to contradict the prior interpretation in which it ***agreed with ProAg*** that all income reported on Line 2 of the insured's Schedule F (including income attributable to a disregarded entity) must be included as allowable revenue for purposes of calculating a claim for indemnity.

described above, any claims for extra-contractual relief are premature and cannot be sustained. Accordingly, Counts II through VI of the counterclaim should be dismissed without prejudice pending further proceedings.

Federal crop insurance policies "are not typical private insurance agreements." *Williamson Farm v. Diversified Crop Ins. Servs.*, 917 F.3d 247, 249 (4th Cir. 2019). "Yes, each contract is 'between a farmer and an insurance provider,' but 'the FCIC determines the terms and conditions' of the policy." *Bachman Sunny Hill Fruit Farms, Inc. v. Producers Agric. Ins. Co.*, 57 F.4th 536, 538-39 (6th Cir. 2023) (quoting *Balvin v. Rain & Hail, LLC*, 943 F.3d 1134, 1136 (8th Cir. 2019)). As the agency charged with regulating the federal crop insurance program, the FCIC has enacted a "regulatory scheme [that] balances the need for crop insurance as a way to promote and stabilize agriculture markets with the risk inherent in offering these policies **by limiting the remedies available to claimants under the program**." *Williamson Farm v. Diversified Crop Ins. Servs.*, 2018 U.S. Dist. LEXIS 49249, at *5 (E.D.N.C. Mar. 26, 2018) (emphasis added).

When it created the federal crop insurance program, Congress expressly authorized the FCIC to implement policy provisions and other regulations that would displace conflicting state laws. *See* 7 U.S.C. § 1506(l) ("State and local laws or rules shall not apply to contracts, agreements, or regulations of the [FCIC] or the parties thereto to the extent that such contracts, agreements, or regulations provide that such laws or rules shall not apply, or to the extent that such laws or rules are inconsistent with such contracts, agreements, or regulations.")  Based on this authorization, in 2004 (effective for 2005 and succeeding crop years), the FCIC revised the regulations at 7 C.F.R. Part 400, Subpart P ("Preemption of State Laws and Regulations") to restrict any policyholder from pursuing a claim for extra-contractual damages from an approved insurance provider ("AIP") arising from actions or omissions involving policy administration or

12

claim handling *unless* the policyholder first obtains a finding from the FCIC that the AIP, "its employee, agent, or loss adjuster failed to comply with the terms of the policy or procedures issued by FCIC and such failure resulted in the insured receiving a payment in an amount that is less than the amount to which the insured was entitled." 7 C.F.R. § 400.352(b)(4). In so doing, the FCIC "create[d] a condition precedent to an insured's pursuit of damages, expenses, and fees from the insurer (the 'FCIC predetermination requirement')." *J.O.C. Farms, LLC v. Fireman's Fund Ins. Co.,* 737 Fed. Appx. 652, 655 (4th Cir. 2018).

As reflected in the rulemaking comments quoted at length in ProAg's initial brief, the FCIC chose to limit availability of extra-contractual damages to protect "program integrity" and "ensure the uniform application of [its] policies and procedures." 69 Fed. Reg. 48652, 48717 (Aug. 10, 2004). The FCIC further noted that it "elected not to completely preempt the imposition of punitive or compensatory damages. There may be instances where the circumstances are so egregious that such damages are warranted and FCIC does not want to take the authority away from the states to regulate conduct through the imposition of such damages. However, FCIC [by establishing the predetermination requirement] has **eliminated the possibility that such damages may be imposed when the insurance provider follows FCIC's policy and procedures**." *Id.* at 48726 (emphasis added).

The extra-contractual claims presented by Respondent are premised on alleged actions or omissions by ProAg relating to the calculation of Finneman's claim for indemnity. Specifically, Finneman claims that C&D's revenue should not have been included in the calculation of revenue-to-count, despite the fact that under the FCIC interpretation rendered post-arbitration such revenue was correctly considered in the claim calculations. As a result, Finneman's extra-contractual claims plainly "interfere with or conflict with" the WFRP policy provisions and procedures. *See*

*Farm Mgmt. Co., LLC v. Rural Cmty. Ins. Agency, Inc.*, 2015 U.S. Dist. LEXIS 54754 *23 (E.D. Wash. April 21, 2015) (permitting recovery of punitive or compensatory damages would interfere with or conflict with the Act, regulations, and policy provisions). Consequently, Finneman's claims are subject to the predetermination requirement; and because he has failed to obtain authorization from the FCIC, these claims are barred.

In arguing for a more limited view of federal preemption, Finneman cites two district court decisions: *Dixon v. Producers Agriculture Ins. Co.*, 198 F.Supp.3d 832 (M.D.Tenn.2016) and *Pelzer v. ARMtech Ins. Servs.*, 928 F.Supp.2d 1071 (E.D.Ark.2013). Both cases involved conduct by an approved insurance provider that **pre-dated the existence of a policy**; in each instance, the district court concluded that state law claims premised on purely **pre-policy** representations were not preempted.

*Dixon* involved alleged misrepresentations by a company representative that the plaintiffs' burley tobacco crops would qualify for coverage. After the plaintiffs applied for policies and planted tobacco crops, it was determined that the tobacco acreage was uninsurable due to plaintiffs' failure to plant the acreage in any of the three prior years. (The company representative had allegedly told them that a prior hay crop would satisfy this "one-in-three" requirement, which turned out not to be the case.) The plaintiffs sued the insurer for fraudulent and negligent misrepresentation. *Dixon*, 198 F.Supp.3d at 834-36. The defendant moved for summary judgment based on the plaintiffs' failure to comply with the predetermination requirement. The district court denied the motion based on the plaintiffs' assurances that their claims had nothing to do with the MPCI policies and that plaintiffs were seeking only damages rooted in pre-policy misrepresentations, observing:

> In order to avoid preemption, Plaintiffs must show damages that are unrelated [to] the insurance policy because federal law preempts state-law claims regarding issues

14

> that involve a policy or procedure interpretation. While Tennessee courts may apply the benefit-of-the-bargain rule to actions for negligent misrepresentation, they are not required to do so mechanically in every misrepresentation case. Here, if Plaintiffs are seeking damages that give them the benefit of their bargain, namely, the difference between the actual value of the property received and the value the property they would have possessed had the misrepresentation been true, their state-law claims are preempted under federal law and subject to dismissal.

*Id.* at 841 (internal quotes and citations omitted).

*Dixon* is distinguishable because the claims in that action involved conduct that pre-dated the policies and thus (at least arguably) did not arise under or in relation to a reinsured policy. On the other hand, Finneman's claims herein directly challenge ProAg's actions in servicing an existing policy.

*Pelzer* similarly involved pre-policy representations by a company employee that the plaintiffs would be able to insure corn planted in a double-cropping practice behind harvested winter wheat. After the plaintiffs applied for the policies and planted their corn, it was found that planting corn behind wheat was not a recognized "good farming practice." That decision was affirmed by the RMA, and the plaintiffs then sued the approved insurance provider based on the employee's alleged misrepresentations regarding insurability. The plaintiffs made clear that they were not suing on the basis of the good farming practice decision but instead because they purchased the policies and planted the crops on the basis of assurances that there would be coverage. *Pelzer*, 928 F.Supp.2d at 1074-75. Again, in this instance, Finneman's claims are based entirely on the servicing of an existing policy, not pre-policy conduct.

Aside from the obvious factual distinctions, the primary legal issue decided in *Dixon* and *Pelzer* was that certain state law tort claims are not subject to the FCIC predetermination requirement. *Id.* at 1078-79. In so holding, both courts relied on a decision by the Tennessee Court of Appeals in *Plants, Inc. v. Fireman's Fund Ins. Co.*, 2012 Tenn. App. LEXIS 561 (Aug.

13, 2012). However, the FCIC has expressly recognized that the *Plants* holding was erroneous and not in accordance with the policy or attendant regulations. In FAD-240 (ECF No. 20-9 at PageID.359-360) and again in FAD-251 (ECF No. 20-10 at PageID.361-362), the FCIC concluded that the *Plants* decision was "counter to" the regulations. Thus, even if this case involved pre-policy actions (which it does not), the *Dixon* and *Pelzer* courts' findings that the predetermination requirement does not apply to tort claims arising from pre-policy acts or omissions has been flatly rejected by the FCIC.

Plaintiff has also cited a litany of cases that stand for the well-established premise that the Federal Crop Insurance Act and its regulations do not establish a basis for complete preemption of state law. A string cite of these cases, beginning with *Rio Grande Underwriters, Inc. v. Pitts Farms, Inc.*, 276 F.3d 683 (5th Cir. 2001), is found on page 12 of Finneman's Brief. To be clear, the principle of complete preemption has not been raised by ProAg and has nothing whatsoever to do with the question before the Court. Rather, the relevant legal concept for purposes of the present motion—which is indisputable—is that the Federal Crop Insurance Act and its regulations preempt **inconsistent** or **conflicting** state laws. In *J.O.C. Farms,* the court addressed an insured's similarly mistaken reliance on cases addressing complete preemption and noted:

> As JOC observes, numerous courts have held that the FCIA and its regulations do not completely preempt state law causes of action. However, these authorities provide limited assistance to JOC, as both the district court's holding and the Insurance Defendants' argument rely only on ordinary conflict preemption. Congress has authorized the preemption of state laws or rules that conflict with regulations promulgated and contracts authorized by the FCIC.

*J.O.C. Farms*, 737 Fed. Appx. at 754 (internal citations omitted).

### III.  CONCLUSION

ProAg respectfully prays for entry of summary judgment granting its petition for vacatur and denying and dismissing the counterclaim.  ProAg further prays for such other, general relief to which it may be entitled.

Dated: November 22, 2023            Respectfully submitted,

SIEGEL, BARNETT & SCHUTZ, L.L.P.

*/s/ Reed Rasmussen*
Reed Rasmussen
415 S. Main Street, Suite 400
PO Box 490
Aberdeen, SD  57402-0490
Telephone No. (605) 225-5420
Facsimile No. (605) 226-1911
rrasmussen@sbslaw.net


- AND -

Jeffrey S. Dilley
Henke-Bufkin Law Firm, P.A.
P.O. Box 39
Clarksdale, MS 38614
Telephone:  (662) 624-8500
Facsimile:  (662) 624-8040
E-mail:  jsd@henke-bufkin.com

***Attorneys for Producers Agriculture Insurance Company***