UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| PRODUCERS AGRICULTURE INSURANCE COMPANY,<br><br>     Plaintiff,<br><br>  vs.<br><br>DAVID FINNEMAN,<br><br>     Defendant. | 5:22-CV-05062-KES<br><br><br>ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

   Plaintiff, Producers Agriculture Insurance Company (ProAg), moves for summary judgment on its petition to vacate or, in the alternative, nullify an arbitration award rendered on June 20, 2022, in a matter between ProAg and defendant, David Finneman. Docket 17; Docket 28 ¶ 9 (not disputing arbitrator issued award on June 20, 2022). ProAg also seeks summary judgement on Finneman's counterclaims for extra-contractual damages, including consequential damages, punitive damages, and attorneys' fees. *See* Docket 12 at 5–15; Docket 17; Docket 19 at 15. Finneman opposes ProAg's motion and makes his own motion for summary judgement on his counterclaim seeking confirmation of the arbitration award. Docket 25; Docket 26. ProAg opposes Finneman's motion. Docket 32.

**Background**

Finneman is a South Dakota farmer. *See* Docket 12-2 at 1; Docket 28 ¶ 1. ProAg is a crop insurance company. Docket 28 ¶ 1; Docket 32 ¶ 1. As part of its business, ProAg issues agricultural insurance policies, including Whole-Farm Revenue Protection (WFRP) policies. *See* Docket 28 ¶ 1. The basic function of a WFRP policy is to "provide[] protection against loss of revenue that [the policyholder] expect[s] to earn or will obtain from commodities [the policyholder] produce[s] or purchase[s] for resale during the insurance period." Docket 12-1 at 1. Such policies are regulated by the Federal Crop Insurance Act (FCIA) and the Federal Crop Insurance Commission (FCIC). *See* Docket 28 ¶ 2; Federal Crop Insurance Act, 7 U.S.C. §§ 1501–1524. Previously the FCIC provided crop insurance directly to producers, but today the FCIC contracts with authorized insurance companies. *American Growers Ins. Co. v. FCIC*, 532 F.3d 797, 798 (8th Cir. 2008). Through the FCIA and "related regulations issued by the Secretary of Agriculture," the FCIC exercises "significant control over all aspects of the federal crop insurance program." *Id.* "Though [a federal crop insurance] policy is a contract between a farmer and an insurance provider, the FCIC determines the terms and conditions of federal crop insurance policies." *See Balvin v. Rain & Hall, LLC*, 943 F.3d 1134, 1136 (8th Cir. 2019).

Pro Ag issued Finneman a WFRP policy for the 2017 crop year. *See* Docket 12-1; Docket 28 ¶ 1. This policy purported to insure 316 acres of corn and 280 acres of safflower planted by Finneman. *See* Docket 12 at 6; Docket 13

2

at 2. The insured on the WFRP policy was listed as the individual "David Finneman[.]" *See* Docket 12-2. The terms of the contract were contained in the standard form 2017 WFRP Pilot Policy (WFRP Pilot Policy) promulgated by the FCIC. *See* Docket 12-1; Docket 28 ¶ 3.

The WFRP Pilot Policy protects "approved revenue" that the policyholder earns or expects to earn from commodities produced or purchased during the policy period. *See* Docket 12-1 at 18. "Approved revenue" is the amount of "allowable revenue" that is approved by the insurer, and "allowable revenue" is "farm revenue, specified by the policy and including applicable adjustments," that is required to be reported to the Internal Revenue Service (IRS). *See id.* at 3. Allowable revenue also includes "[t]he sales of animals, produce, grains and other commodities [the policyholder] raised" as reported in Line 2 of the Schedule F tax form submitted to the IRS by the policyholder. *See id.* at 19. Under the contract, the policyholder is required to submit to ProAg a "Whole-Farm History Report" that included the policyholder's Schedule F tax forms that had been submitted to the IRS for a five-year period. *See id.* at 24. The policy provided for indemnity if the insured's "revenue-to-count" fell below the insured revenue, the latter of which was calculated using approved revenue multiplied by the percentage of the revenue the policyholder elected to insure at their coverage level. [1] *See id.* at 19; Docket 12-2 at 1 (showing Finneman's

---

[1] The calculation could also be altered depending on the policyholder's "approved expenses," but approved expenses were not relevant in Finneman's case. *See* WFRP Pilot Policy § 25(d).

coverage level to be 75%).  The schedule of insurance distributed to Finneman by ProAg for insurance year 2017 showed an approved revenue of $196,128, which, when multiplied by his coverage level of 75%, produced a "Whole-Farm Liability" of $147,096. *See* Docket 12-2 at 1–2.

ProAg also sold five traditional multiple peril crop insurance policies to C&D Acres, LLC, covering the 2017 crop year for acres of safflower and soybeans that were planted by the entity. *See* Dockets 12-4, 12-5, 12-6, 12-7, 12-8. C&D Acres is a limited liability corporation originally established by Finneman and his then spouse, Connie Finneman. *See* Docket 12-3; Docket 25-4 at 2. In 2011, a document signed by Finneman and Connie Finneman was filed with the South Dakota Secretary of State that stated that Connie Finneman had voluntarily disassociated from C&D Acres. *See* Docket 12-3.

Finneman filed a notice of loss under his individual WFRP policy on July 5, 2017. *See* Docket 25-4 at 1. Then, following the filing of his 2017 taxes, Finneman submitted an insurance claim to ProAg under the WFRP policy. *See id.* On April 20, 2018, ProAg informed Finneman that his policy was voided for two reasons. First, because the Whole-Farm History Report required by § 16(a)(3) of the WFRP Pilot Policy failed to list revenue from C&D Acres, despite Finneman having listed C&D Acres income on his Schedule F form that was submitted to the IRS. *See id.* at 2. ProAg stated that, even if the policy was not voided, all revenues earned by C&D Acres would have been classified as revenue-to-count, thus reducing any indemnity accordingly. *See id.* Second, ProAg voided the policy because Connie Finneman had a special beneficial

4

interest (SBI) that was not listed on Finneman's individual policy. *See id.* at 2–
3. In its letter, ProAg asserted that the spouse of an applicant is presumed to
have an SBI unless the spouses can show that they are legally separated. *See
id.* at 3. As a result of the policy's voidance, ProAg informed Finneman that it
would retain 20% of Finneman's previously paid insurance premiums and not
pay Finneman's claim for the losses on the acres of corn and safflower he had
insured under his personal WFRP policy. *See id.* at 4.

Section 33(a) of the WFRP Pilot Policy, with limited exceptions, requires
that all disputes be submitted to arbitration "in accordance with the rules of
the American Arbitration Association (AAA)." Docket 28 ¶ 4; Docket 12-1 at 38.
On April 15, 2019, Finneman submitted a demand for arbitration pursuant to
§ 33 of the WFRP Pilot Policy. Docket 25-3. Finneman disputed ProAg's
determination that he was not entitled to indemnity for his 2017 crop failures.
*See id.*

David A. Allgeyer (the Arbitrator) was appointed to arbitrate the dispute.
*See* Docket 12-10 at 5; Docket 20-2 at 12. On ProAg's motion for summary
disposition, the Arbitrator determined that Connie Finneman did not have an
SBI because a separation agreement existed that rendered the Finnemans
legally separated under applicable state law. *See* Docket 12-10 at 2–5.
Following further proceedings and briefing by the parties, the Arbitrator issued
an arbitration award in favor of Finneman, in the amount of $97,781 plus
interest. Docket 20-2 at 10. In reaching his decision, the Arbitrator first
considered whether ProAg properly denied Finneman's claim for failing to list

Connie Finneman as a person having an SBI. *See id.* at 7–8. The Arbitrator found that Finneman and Connie Finneman were legally separated under applicable state law, and thus the policy was not void due to a failure to list a person having an SBI. *See id.* Second, the Arbitrator determined that "C&D's revenue should not have been included in Mr. Finneman's Revenue to Count." *Id.* at 8. In doing so, the Arbitrator relied on an implied "covenant of good faith and fair dealing on the part of the parties" to find that "under the unique facts of this case," C&D's revenue should have been excluded. *Id.* at 9. Third, the Arbitrator calculated the award to which Finneman was entitled. *See id.* at 10–11.

On July 18, 2022, ProAg requested review of the arbitration award by the Deputy Administrator of the Risk Management Agency (RMA)[2]. *See* Docket 20-3. ProAg argued that the Arbitrator impermissibly rendered an award based on a disputed policy provision for which Finneman failed to request an FCIC interpretation. *See id.* at 1, 5. Specifically, ProAg asserted that an interpretation of the term "revenue-to-count" should have been sought. *See id.* at 5. ProAg also contended that the Arbitrator should not have relied on the concept of good faith and fair dealing to support his conclusion that C&D revenue should not have been included in Finneman's revenue to count. *See id.* at 1, 5–9.  As authority for its request, ProAg cited § 33(a)(1)(ii) of the WFRP

---

[2] The RMA is the agency that manages the FCIC. *See About the Risk Management Agency*, USDA, https://www.rma.usda.gov/About-RMA/ (last visited May 8, 2024).

Pilot Policy, which operated to nullify any award where a policy and procedure interpretation should have been sought from the FCIC but was not. *See id.* at 2–3. ProAg also pointed to federal regulations that nullify arbitration awards where a final agency interpretation is erroneously not sought, and that also provide a mechanism for FCIC review of an award under such circumstances. *See id.* at 1-2; 7 C.F.R. § 400.766(b)(3)–(4).

Before the FCIC responded to ProAg's request, ProAg filed with the court on July 19, 2022, a petition to vacate, or, in the alternative, nullify the arbitration award. Docket 1. On October 7, 2022, Finneman brought a counterclaim seeking (1) confirmation of the arbitration award and, in the alternative, extra-contractual damages, consequential damages, punitive damages, and attorney's fees under theories of (2) judicial review (3) negligence (4) negligent misrepresentation, (5) waiver and estoppel and (6) reformation. Docket 13 at 1–7.

Also on October 7, 2022, Finneman submitted a formal request pursuant to § 33 of the WFRP Pilot Policy and 7 C.F.R. § 400.352(b)(4) for an FCIC determination that ProAg failed to comply with the terms of the WFRP Pilot Policy and FCIC procedures, resulting in damages to Finneman. *See* Docket 20-5 at 2. The Director of the RMA Administrative Review Division declined to issue a determination on the grounds that the WFRP Pilot Policy did not have a contract provision that authorized the FCIC to issue such a determination. *See* Docket 20-6 at 1. The RMA's refusal to issue a determination was appealed by Finneman to an Administrative Law Judge with the National Appeals Division

7

(NAD), and then to the Director of the NAD, both of whom affirmed the FCIC's

decision not to issue a noncompliance determination. *See* Dockets 20-7, 20-8.

The FCIC's decision not to issue a determination on whether ProAg complied

with the policies or procedures is now the subject of a separate action by

Finneman against the FCIC. *See Finneman v. United States Dep't Agric.*, No.

5:23-CV-05034-KES (D.S.D. filed Jan. 3, 2024).

On October 20, 2022, the FCIC responded to ProAg's request for review

of the arbitration award. *See* Docket 13-1.  In that letter, the RMA Deputy

Administrator determined that the Arbitrator's decision involved a disputed

policy provision, for which an agency interpretation should have been sought.

*Id.* at 1–2. His letter stated that resolution of the controversy involved the

interpretation of two policy questions:

> 1) Whether the WFRP policy and handbook require revenue
> attributable to commodities grown by a disregarded entity to be
> considered as part of the insured's allowable revenue for WFRP
> purposes, and 2) Whether Line 2 of an insured's Schedule F income
> reported under a single taxpayer identification number must be
> entered in the Allowable Revenue Worksheet.

*Id.* at 1. The FCIC found that "a disregarded entity" such as C&D Acres "which

does not file a separate tax return is part of the farm operation of the tax entity

which files a tax return including revenue from that disregarded entity and all

revenue reported on Line 2 of the tax entity's Schedule F is considered

allowable revenue for that tax entity." *Id.* at 4. According to the FCIC

determination, all revenue reported on Line 2 of the Schedule F form should

have been included as revenue-to-count when calculating the claim for

indemnity, and would in effect be subtracted from any indemnity Finneman was due under the policy. *See id.*

On October 28, 2022, ProAg filed an answer to the counterclaim. Docket 13. ProAg asserted that the counterclaim failed to state a claim on which relief could be granted, cited the RMA decision finding the arbitration award involved a disputed policy provision, and asserted that the arbitration award was a nullity pursuant to 7 C.F.R. § 400.766(b)(4)(ii)(a). *See id.* at 1.

ProAg now moves for summary judgement on its claims seeking vacatur of the arbitration award and dismissal of all six counts of the counterclaim with prejudice. *See* Docket 17; Docket 19 at 27. Finneman opposes ProAg's motion and makes a cross motion for summary judgment on Count 1 of the counterclaim seeking confirmation of the arbitration award. *See* Docket 25; Docket 26 at 13.

## Legal Standard

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party can meet this burden by presenting evidence that there is no genuine dispute of material fact or that the nonmoving party has not presented evidence to support an element of its case on which it bears the ultimate burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The moving party must inform the court of the basis for its motion and also identify the portions of the record that show

9

there is no genuine issue in dispute. *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citation omitted).

To avoid summary judgment, "[t]he nonmoving party may not 'rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial.'" *Mosley v. City of Northwoods*, 415 F.3d 908, 910 (8th Cir. 2005) (quoting *Krenik v. Cnty. of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995)). Summary judgment "must be denied if on the record then before it the court determines that there will be sufficient evidence for a jury to return a verdict in favor of the nonmoving party." *Krenik* 47 F.3d at 957. It is precluded if there is a genuine dispute of fact that could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

Generally, when considering a motion for summary judgment, the court views the facts and the inferences drawn from such facts "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). In cases involving cross motions for summary judgment, however, the standard summary judgment principles apply with equal force, though the approach is slightly modified. *See Woodstone Ltd. P'ship v. City of Saint Paul*, 2023 WL 3586077, at *5 (D. Minn. May 22, 2023). "[T]he court views the record in the light most favorable to plaintiff when considering defendant's motion, and the court views the record in the light most favorable to defendant when considering plaintiff's motion."

10

*Thompson-Harbach v. USAA Fed. Sav. Bank*, 359 F. Supp. 3d 606, 614 (N.D. Iowa 2019).

I.    **Discussion**

   A.    **Whether the arbitration award should be confirmed or vacated**

   Arbitration awards are accorded "great deference" on judicial review. *Winfrey v. Simmons Food, Inc.*, 495 F.3d 549, 551 (8th Cir. 2007). "The award must be confirmed so long as the arbitrator 'is even arguably construing or applying the [agreement]' even if the court thinks that his interpretation of the agreement is in error." *Id.* (quoting *United Food & Commercial Workers' Union Local 655 v. St. John's Mercy Health Sys.*, 448 F.3d 1030, 1032 (8th Cir. 2006)).

   Nonetheless, "[a]n arbitrator's broad authority is constrained by the Federal Arbitration Act[.]" *Roe v. Cargill Inc.*, 333 F. Supp. 2d 808, 813 (W.D. Ark. 2004). Under the Federal Arbitration Act (FAA) an arbitration award may be vacated or modified under four circumstances:

> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a)(1)–(4). These "statutory grounds for prompt vacatur and modification may [not] be supplemented by contract" and are "exclusive." *Hall*

*Street Associates, L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 578, 584 (2008). The applicable ground for vacatur of the arbitration award in this case is the fourth ground, that allows for vacatur where the arbitrator exceeded their powers. *See* Docket 1 at 4; Docket 19 at 9–12; 9 U.S.C. § 10(a)(4). "An arbitrator does not 'exceed his powers' by making an error of law or fact, even a serious one." *Beumer Corp. v. ProEnergy Services*, LLC, 899 F.3d 564, 565 (8th Cir. 2018). Nonetheless, an arbitrator must "arguably" construe or apply the contract in order to remain within the scope of his powers. *See id.*

ProAg argues that the Arbitrator exceeded his powers by interpreting an FCIC policy or procedure, which is prohibited by § 33(a)(1) of the WFRP Pilot Policy. *See* Docket 19 at 9–12. Finneman contends that the Arbitrator applied controlling legal authority and the terms of the WFRP Pilot Policy itself and thus did not engage in impermissible policy or procedure interpretation. *See* Docket 26 at 7, 9.

### 1.   Whether the Arbitrator exceeded his powers by impermissibly interpreting an FCIC policy or procedure

Section 33(a)(1) of the WFRP Pilot Policy limits the arbitrator's authority to interpret "policy or procedure[s]" as follows:

> All disputes involving determinations made by us, except those specified in section 33(d) or (e), are subject to mediation or arbitration. However, if the dispute in any way involves a policy or procedure interpretation, regarding whether a specific policy provision or procedure is applicable to the situation, how it is applicable, or the meaning of any policy provision or procedure, either you or we must obtain an interpretation from FCIC in accordance with 7 CFR part 400, subpart X or such other procedures as are established by FCIC.

Docket 12-1 at 38. The WFRP Pilot Policy also states that "[f]ailure to obtain, or comply with, any required interpretation from FCIC will result in nullification of any agreement or award." *Id.* at 39. A related FCIC regulation establishes that policy or procedure interpretation is the exclusive province of the agency. *See* 7 C.F.R. § 400.766(b)(1). The same section allows for review of an arbitration award where a party believes an FCIC interpretation should have been sought but was not. 7 C.F.R. § 400.766(b)(4). Where a party seeks such review and the "FCIC determines that a final agency determination should have been sought and it was not, or the decision was not in accordance with the final agency determination or FCIC interpretation rendered with respect to the disputed provision" the "award is then automatically nullified." 7 C.F.R § 400.766(b)(4)(ii).

ProAg properly sought FCIC review of the arbitration award under 7 C.F.R. § 400.766(b)(4). Docket 20-3. The FCIC determined that the Arbitrator exceeded his authority by interpreting a policy or procedure. Docket 20-4. Thus, the arbitration award is "automatically nullified[.]". 7 C.F.R. 400.766(b)(4)(ii)(A).[3]

Finneman argues that the Arbitrator did not need to seek an FCIC policy or procedure interpretation because he "rel[ied] upon the express terms of the WFRP policy, existing Final Agency Determinations (FADs) from the FCIC and controlling federal case law[.]" Docket 26 at 9. Finneman suggests that whether

---

[3] A procedure exists to appeal an FCIC determination. *See* 7 C.F.R. § 400.766(b)(4)(ii)(B). But Finneman did not appeal the FCIC decision finding that the Arbitrator should have sought a policy or procedure interpretation.

resolution of the dispute required interpretation of a policy or procedure, or instead could be resolved by application of the contract, was a threshold question of arbitrability within the Arbitrator's authority. *See id.* at 8.

In support of this position, Finneman cites *Balvin v. Rain & Hall, LLC*, 943 F.3d 1134 (8th Cir. 2019). *Balvin* concerned cross-motions for summary judgment requesting vacatur and confirmation of an arbitration award. *Id.* at 1136.  In that case, the insurer, Rain & Hall, issued a crop insurance policy to Balvin. *Id.* Rain & Hall later denied a claim by Balvin when the company "determined that the appraised value of Balvin's crop exceeded his policy's guaranteed minimum crop production[.]" *Id.* The denial of Balvin's claim was confirmed at arbitration. *Id.* Balvin argued that the arbitrator exceeded his powers by interpreting a policy or procedure when he determined the "appraised value" of Balvin's crops. *Id.* at 1137. Balvin pointed to FCIC handbooks requiring a production worksheet and signed appraisal worksheet in order to perform an appraisal, neither of which were completed by Rain & Hall. *See id.* at 1136–37. Without these worksheets, Balvin argued, the arbitrator necessarily had to interpret "appraised value" in order to determine what in fact the appraised value was. *Id.* at 1137. Rain & Hall on the other hand argued that "the arbitrator did not exceed his powers by interpreting a policy or procedure when he concluded that the appraised value of Balvin's crop should be used to determine whether Balvin had an insured loss[.]" *Id.* at 1136.

14

The court found that because Balvin did not argue before the arbitrator that resolution of the dispute required interpretation of the policy term "appraised value," the arbitrator was "at least 'arguably construing or applying the contract and acting within the scope of his authority'" when he made "a credibility determination about the appraisals." *Id.* at 1137. The court pointed out that because the policy incorporated American Arbitration Association (AAA) rules, the "parties agreed to allow the arbitrator to determine threshold questions of arbitrability." *Id.* (quoting *Green v. SuperShuttle Int'l, Inc.*, 653 F.3d 766, 769 (8th Cir. 2011)). Thus, in the court's view, the threshold determination of whether the dispute over the appraisals required a policy or procedure interpretation or was instead a factual dispute that could be resolved by applying the contract's terms, was within the power of the arbitrator to decide. *See id.* The court also held that "[a]n arbitrator has not exceeded his powers where neither party suggested that a term of the policy was subject to interpretation, but the interpretation dispute instead arose after the arbitration proceedings." *Id.* at 1137–38.

*Balvin*'s holding that an arbitrator is within its powers when it determines whether resolution of a controversy requires a policy interpretation, where that question is not raised before arbitration, might, at first blush, appear applicable to the Arbitrator's decision here. *See id.*, 943 F.3d at 1137–38. Like the policy at issue in *Balvin*, the WFRP Pilot Policy incorporates the AAA rules. *See* Docket 12-1 at 38 ("If resolution cannot be reached through mediation, or you and we do not agree to mediation, the disagreement must be

15

resolved through arbitration in accordance with the rules of the American Arbitration Association (AAA)[.]"). And like in *Balvin*, the Arbitrator did not explicitly consider whether his decision on whether C&D revenue should have been included as revenue-to-count required an interpretation of a disputed FCIC policy or procedure. *See generally* Docket 12-11. While ProAg did cite § 33(a)(1) in its answering statement to Finneman's demand for arbitration, it did not argue to the Arbitrator that resolution of the revenue-to-count issue required a policy or procedure interpretation. *See* Docket 26-1 at 22–23, *Finneman v. United States Dep't Agric.*, No. 5:23-CV-05034-KES (D.S.D. filed Jan. 3, 2024).

But the circumstances at hand differ significantly from those in *Balvin*. After the arbitration award at issue in *Balvin* was rendered on February 7, 2018, the FCIC promulgated 7 C.F.R. § 400.766(b)(4). *See* General Administrative Regulations: Subpart X—Interpretations of Statutory Provisions, Policy Provisions, and Procedures, 83 Fed. Reg 66,582 (Dec. 27, 2018) (to be codified at 7 C.F.R. § 400.766(b)(4)); *Balvin v. Rain & Hail, LLC*, 336 F. Supp. 3d 1008, 1011 (D.S.D. 2018), *aff'd in part, rev'd in part and remanded*, 943 F.3d 1134 (8th Cir. 2019) (stating that the arbitration in *Balvin* closed on January 29, 2018, and the award was issued on February 7, 2018). There now exists a mechanism for FCIC review of whether an agency determination should have been sought by an arbitrator, and for automatic nullification where such a determination was erroneously not sought. *See* 7 C.F.R. § 400.766(b)(4)(ii)). Because this mechanism was unavailable to Balvin at the

time of arbitration, he did not use it. *See Balvin*, 336 F. Supp at 1011. So Balvin both failed to raise at arbitration the issue of whether resolution of the controversy required the arbitrator to impermissibly interpret a term of the policy, and also failed, through no fault of his own, to use a non-existent method of raising this issue after the arbitration was complete. *See Balvin*, 943 F.3d at 1137–38. These failures were directly relevant to *Balvin*'s reasoning, which stated that "[a]n arbitrator has not exceeded his powers where neither party suggested that a term of the policy was subject to interpretation, but the interpretation dispute instead arose after the arbitration proceedings." *Id.*

The Eighth Circuit briefly discussed 7 C.F.R. § 400.766(b)(4) in a footnote in *Balvin*, and gestured at how, when invoked, the new regulation operates to authoritatively resolve the issue of whether an arbitrator exceeded its authority by interpreting a policy or procedure:

> The RMA has contemplated such a scenario [where a party first raises the argument that the arbitrator impermissibly interpreted a term of the policy following the arbitration decision]. It issued a Final Agency Decision in 2015 recognizing that a dispute about the interpretation of a policy or procedure "may arise after the arbitration award has been rendered." RMA Final Agency Determination 230 (U.S.D.A. 2015). And according to a new FCIC regulation, if either party to an arbitration "believes an award or decision was rendered by ... [an] arbitrator ... based on a disputed provision in which there was a failure to request a final agency determination or FCIC interpretation ... the party may request FCIC review the matter to determine if a final agency determination or FCIC interpretation should have been sought." 7 C.F.R. § 400.766(b)(4).

*Balvin*, 943 F.3d at 1138 n.1. As the Eighth Circuit recognized, the regulatory landscape under which the arbitration in *Balvin* occurred was altered by 7 C.F.R. § 400.766(b)(4). In this case, ProAg properly sought FCIC review under 7

17

C.F.R. § 400.766(b)(4). Docket 20-3. The FCIC found that a policy or procedure interpretation should have been sought. Docket 13-1. Thus, the FCIC's review automatically nullified the arbitration award.

An apparent tension exists between 7 C.F.R. § 400.766(b)(4)'s "automatic nullification" of arbitration awards that improperly interpret a policy or procedure, and the FAA's status as the exclusive grounds for vacatur and modification of an arbitration award. *See Hall Street Assocs., L.L.C.*, 552 U.S. at 578. This tension is evident in ProAg's complaint, which seeks vacatur, or in the alternative, nullification of the arbitration award. *See* Docket 1.

In denying relief to a party that failed to timely move for vacatur under § 10 of the FAA and instead "went directly to federal court to seek nullification under the common policy[,]" the Sixth Circuit succinctly described the relationship between administrative nullification and vacatur under the FAA:

> The upshot of this structure is clear: the FCIC can *nullify* an arbitration award when an arbitrator fails to seek the interpretation required by the common policy and its accompanying regulations. And in a timely filed action, a federal court can *vacate* an arbitration award under § 10(a)(4) of the FAA when the arbitrator's decision conflicts with the FCIC's views.

*Bachman Sunny Hill Fruit Farms, Inc. v. Producers Agric. Ins. Co.*, 57 F.4th 536, 543 (6th Cir. 2023), *cert. denied sub nom. Alt's Dairy Farm, LLC v. Nau Country Ins. Co.*, 143 S. Ct. 2566 (2023). Thus, vacation and nullification are not competing remedies, but rather nullification is the result of administrative actions that are given effect by vacatur. Here, the arbitration award conflicts with the FCIC's views, and has been automatically nullified through FCIC review. *See* Docket 20-2 at 2–3; Docket 20-4 at 4. And unlike the plaintiff in

*Bachman*, ProAg timely moved for vacatur of the arbitration award under the FAA. *See Bachman*, 57 F.4th at 54; Docket 1 at 1; 9 U.S.C. § 9 (establishing one-year period for party to apply to confirm an arbitration award); 9 U.S.C. § 12 (establishing three-month period to move to vacate an arbitration award). Thus, the court must grant ProAg's motion as to Count 1.

This conclusion is not altered by Finneman's contention that the Arbitrator did not interpret a policy or procedure in finding that C&D's revenue should not be included as revenue to count, but instead relied on an implied covenant of good faith and fair dealing, and thus applied the terms of the contract. See Docket 20-2 at 9; Docket 26 at 7–9.  First, on administrative review, the FCIC determined that a policy or procedure interpretation should have been sought by the Arbitrator but was not. *See* Docket 20-4 at 1–2. Thus, under the regulatory scheme in place today, but not at the time of the arbitration at issue in *Balvin*, that issue has been authoritatively resolved.

Second, the same reasoning from prior final agency determinations that bars arbitrators from considering equitable or common law claims, applies with equal force to the implied covenant of good faith and fair dealing. In a Final Agency Determination, the RMA found that "no one has the authority to waive or modify the provisions except as authorized in the regulations themselves" and that doctrine of equitable estoppel cannot override express contract terms. *See* RMA Final Agency Determination 211 (U.S.D.A. 2014). The RMA later clarified that "FAD-211 precludes an arbitrator from using equitable estoppel as a grounds for an arbitration award on the grounds that no person has the

authority to waive, modify or change any provision of the policy except as authorized by the policy." RMA Final Agency Determination 282 (U.S.D.A. 2018). Such determinations are "[m]atters of general applicability regarding FCIC's interpretation of the [FCIA] or any regulation codified in the Code of Federal Regulations, including certain policy provisions, which are applicable to all participants in the Federal crop insurance program and the appeals process." 7 C.F.R. § 400.765; *see also* Docket 12-1 at 38–39 (providing in § 33(a)(1)(iii) of the WFRP Pilot Policy that policy interpretations are "matter[s] of general applicability"). Although the FCIC has not issued a final agency determination specifically barring consideration of the covenant of good faith and fair dealing, the same reasoning that bars equitable estoppel applies to the implied covenant of good faith and fair dealing, because an award based on either theory "would waive or modify the provisions [of the policy]." *See* RMA Final Agency Determination 211 (U.S.D.A. 2014); *see also Farm Credit Services of America v. Dougan*, 704 N.W.2d 24, 28 (S.D. 2005) ("The covenant of good faith does not create an amorphous companion contract with latent provisions to stand at odds with or in modification of the express language of the parties' agreement.").

Finneman cites a portion of the Arbitrator's decision that relied on a prior Eighth Circuit case to support its conclusion that the implied covenant of good faith and fair dealing required C&D's revenue be excluded as revenue-to-count. *See* Docket 26 at 7. But as ProAg correctly notes, the authority the Arbitrator cited, *A.W.G. Farms v. FCIC*, 757 F.2d 720 (8th Cir. 1985), did not involve

arbitration. *See id.* at 722–723; Docket 32 at 7. Rather, it involved a direct action against the FCIC concerning a policy directly administered by the FCIC and not a third-party insurance company. *See id.* at 723–25 (noting that the plaintiffs were growers that purchased crop insurance directly from the FCIC and sued the FCIC when it denied their claims for indemnity). That the Eighth Circuit applied the covenant of good faith and fair dealing in reaching its holding in *A.W.G. Farms* has little bearing on whether the arbitration award at issue here should be confirmed, because unlike in *A.W.G. Farms*, the FCIC has determined, pursuant to 7 C.F.R. § 400.766(b)(4) and § 33(a)(1) of the WFRP Pilot Policy, that the Arbitrator failed to seek a necessary policy interpretation. *See* Docket 20-4 at 1. The fact that the Arbitrator's reasoning also relied on the concept of good faith and fair dealing is not relevant to the nullifying effect of FCIC review of the arbitration decision. The FCIC, in finding that the Arbitrator's "decision involved a disputed policy provision," necessarily rejected the conclusion that by invoking the implied covenant, the Arbitrator avoided interpreting a policy or procedure and instead applied the contract to the facts. *See id.*; Docket 1-2 at 8 (reasoning that the covenant of good faith and fair dealing, when applied to the "unique facts of the case," compelled the Arbitrator's conclusion). In short, *A.W.G. Farms* is not controlling authority as Finneman asserts it is, on the issue of whether an arbitrator, prohibited from interpreting a policy or procedure, is within its power to resolve a dispute based on the implied covenant of good faith and fair dealing, where the FCIC has

subsequently found pursuant to § 400.766(b)(4) that the arbitrator failed to seek a policy or procedure interpretation.

The FCIC has, pursuant to its regulations,[4] determined that a policy or procedure interpretation was required to determine whether the revenue of C&D Acres should have been included as allowable revenue for purposes of Finneman's indemnity claim. *See* Docket 20-4. Thus, under 7 C.F.R. § 400.766(b)(4)(ii), the arbitration award is automatically nullified. Because the Arbitrator exceeded his powers, the court must vacate the arbitration award under 9 U.S.C. § 10(a)(4).

### 2.    Whether the dispute should be remanded for further arbitration proceedings

Because the arbitration award must be vacated, the court must next decide what further proceedings are necessary to resolve the controversy between the parties.

Where an arbitration award "may be properly vacated, the appropriate remedy is to remand the case for further arbitration proceedings." *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 511 (2001). "If an award is

---

[4] The FCIC is an agency for purposes of the Administrative Procedure Act. *See Adkins v. Silverman*, 899 F.3d 395, 398 (5th Cir. 2018) (recognizing challenge to FCIC's interpretation of FCIC under the APA). Although the Supreme Court in *Loper Bright Enterprises v. Raimondo*, ___ S. Ct., ___, 2024 WL 3208360 (U.S. June 28, 2024), drastically changed how courts must review agencies' interpretations of law by overriding *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), neither of the parties challenge any of the regulations at issue in this specific case (5:23-CR-05062) as being contrary to law or arbitrary and capricious. *See generally* Docket 19; Docket 26; Docket 32. Nor did either party raise these arguments in the pleadings. *See* Docket 1; Docket 12. Thus, *Loper* does not impact the instant case.

vacated and the time within which the agreement required the award be made has not expired, the court may, in its discretion, direct a rehearing by the arbitrators." 9 U.S.C. § 10(b).

Here, both parties agree that if the arbitration award is vacated, the appropriate remedy is to remand for further arbitration proceedings. *See* Docket 26 at 9–10; Docket 32 at 10. The WFRP Pilot Policy does not establish a time within which the award must be made, but rather sets deadlines for the initiation of arbitration and for judicial review of any arbitration decision. *See* Docket 12-1 at 34. Thus, the appropriate course following vacatur of the arbitration award is remand to the Arbitrator for further arbitration proceedings.

### B.   Whether ProAg's Motion for Summary Judgement Should be Granted as to Counts 2 through 6 of the Counterclaim

In the alternative to confirmation of the arbitration award, Finneman brings five claims in his counterclaim seeking relief. *See* Docket 12 at 9–17. Count 2 seeks judicial review pursuant to § 33(c) of the WFRP Pilot Policy. *See id.* at 9. Count 3 alleges negligence. *Id.* at 11–12. Count 4 alleges negligent misrepresentation. *Id.* at 13. Count 5 seeks recovery under theories of waiver and estoppel. *Id.* at 14. Count 6 seeks reformation of the policy to provide the WFRP protection ProAg guaranteed. Docket 12 at 15.

ProAg argues that because further arbitration proceedings are necessary following vacatur of the arbitration award, Counts 2 through 6 are premature and should be dismissed without prejudice pending further arbitration proceedings. Docket 32 at 11–12. ProAg also argues that Counts 2 through 6

are legally barred and preempted in the absence of an FCIC noncompliance determination. Docket 19 at 15.

The court concludes that Counts 2 through 6 are premature until the conclusion of further arbitration proceedings. Thus, the court does not reach the question of whether the counterclaim is preempted in the absence of an FCIC noncompliance determination. Nonetheless, in order to explain the court's reasoning, it is helpful to explore how FCIC regulations and the WFRP Pilot Policy operate to limit claims against crop insurance providers unless they meet the conditions required for "judicial review."

The Supremacy Clause provides that federal law "shall be the supreme law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. Art. VI. As a result, "[s]tate law is preempted when Congress expressly prohibits state regulation, when Congress implicitly leaves no room for state involvement by pervasively occupying a field of regulation, and when state law directly conflicts with federal law." *Chapman v. Lab One*, 390 F.3d 620, 624 (8th Cir. 2004). Federal regulations also have preemptive effect, provided that the promulgating agency acts within the scope of its authority. *See Hillsborough Cnty., Fla. v. Automated Med. Laboratories, Inc.*, 471 U.S. 707, 713 (1985); *Chapman*, 390 F.3d at 624.

Congress authorized the FCIC to "enter into and carry out contracts or agreements, and issue regulations, necessary in the conduct of its business," and provided that such contracts and regulations preempt inconsistent state

24

laws. 7 U.S.C. § 1506(l). Pursuant to this authority, the FCIC promulgated a regulation expressly preempting any law that "directly or indirectly affect[s] or govern[s]" contracts authorized by the FCIC. *See* 7 C.F.R. § 400.352(a). The FCIC also enacted a regulation that limits the ability of plaintiffs to recover against FCIC-authorized insurers absent an FCIC noncompliance determination by providing that such plaintiffs may not:

> Levy fines, judgments, punitive damages, compensatory damages, or judgments for attorney fees or other costs against companies, employees of companies including agents and loss adjustors, or Federal employees arising out of actions or inactions on the part of such individuals and entities authorized or required under the Federal Crop Insurance Act, the regulations, any contract or agreement authorized by the Federal Crop Insurance Act or by regulations, or procedures issued by the Corporation (Nothing herein precludes such damages being imposed against the company if a determination is obtained from FCIC that the company, its employee, agent or loss adjuster failed to comply with the terms of the policy or procedures issued by FCIC and such failure resulted in the insured receiving a payment in an amount that is less than the amount to which the insured was entitled)[.]

7 C.F.R. § 400.352(4).

The Common Crop Insurance Policy Basic Provisions[5] contain the following related provision in § 20(i):

> In a judicial review only, you may recover attorney's fees or other expenses, or any punitive, compensatory or any other damages from us only if you obtain a determination from FCIC that we, our agent or loss adjuster failed to comply with the terms of this policy or procedures issued by FCIC and such failure resulted in you receiving a payment in an amount that is less than the amount to which you were entitled. Requests for such a determination should be addressed to the following: USDA/RMA/Deputy Administrator of

---

[5] The Common Crop Insurance Policy Basic Provisions are a model policy promulgated by the FCIC for use by insurance companies providing crop insurance through the federal program. *See* 7 C.F.R. § 457.8.

Compliance/Stop 0806, 1400 Independence Avenue, SW.,
Washington, DC 20250-0806.

7 C.F.R. § 457.8(b).

Section 20(i) serves three primary functions: one, it ensures that
attorney's fees and punitive or compensatory damages can be recovered "in a
judicial review only[;]" two, it permits recovery for such damages only if the
FCIC determines that the insurer failed to comply with a policy or procedure;
and three, it provides a procedure to obtain such a determination. *Id.*

As the FCIC noted in its decision declining to issue a noncompliance
determination, § 20(i) is conspicuously absent from the WFRP Pilot Policy. *See
generally* Docket 12-1; *see also* Docket 20-6 at 1. One strange result of this
omission is that in an action brought in connection with the policy, an FCIC
noncompliance determination may still be required to recover certain
extracontractual damages because of the requirements posed by 7 C.F.R.
§ 400.352(4). Yet there exists no explicit language in the WFRP Pilot Policy
providing for how to obtain such a noncompliance determination. *See generally*
Docket 12-1.

Another paradox created by the absence of § 20(i) in the WFRP Pilot
Policy relates to judicial review and its status as the exclusive pathway to
obtaining extracontractual damages. Because of the absence of § 20(i), the
policy contains no provision that limits recovery for extracontractual damages
to actions for judicial review. Still, the WFRP Pilot Policy establishes the rights
of the parties to seek judicial review of decisions rendered in arbitration, and
states that "[a]ny decision rendered in arbitration is binding on you and us

unless judicial review is sought[.]" Docket 12-1 at 39. Thus, while the WFRP
Pilot Policy leaves open the possibility of bringing claims for extracontractual
damages that are not styled as "judicial review," it also makes the results of
arbitration binding absent judicial review.

     As discussed earlier, the Arbitrator's decision must be vacated and
remanded for further proceedings consistent with the FCIC's interpretation.
The WFRP Pilot Policy provides that, "[n]otwithstanding any provision in the
rules of the AAA, you and we have the right to judicial review of any decision
rendered in arbitration." *Id.* Thus, because no decision has yet been rendered
in the remanded arbitration proceedings, Finneman's claim for "judicial review
of any decision rendered in arbitration" at Count 2 has no decision on which to
operate, and thus is premature. *See* Docket 12 at 9.

     Counts 3 through 6 of the counterclaim are also premature. Counts 3
through 6 are all pled in the alternative to confirmation of the arbitration
award. *See id.* at 12–15. Now that the award must be vacated and the
controversy remanded to arbitration for proceedings consistent with the FCIC's
policy or procedure interpretation, these claims are premature absent a final
arbitration. Although they are not explicitly styled as claims for judicial review,
any arbitration decision is binding absent judicial review, which can only occur
following the conclusion of arbitration proceedings. *See* Docket 12-1 at 39.

     Counts 3 (negligence), 4 (negligent misrepresentation) and 5 (waiver and
estoppel) are premature for the additional reason that until arbitration
proceedings are concluded, Finneman cannot show damages. "Under South

Dakota law, there are three elements to a negligence claim: (1) a duty on the part of the defendant; (2) a breach of that duty; and (3) a legal or proximate injury resulting from that breach of duty." *Jones v. Hirschbach Motor Lines, Inc.*, 588 F. Supp. 3d 953 (D.S.D. 2022). To state a claim for negligent misrepresentation, a plaintiff must also show damages. *See S. Dakota Wheat Growers Assn. v. Chief Industries, Inc.*, 337 F. Supp. 3d 891, 912 (D.S.D. 2018). Count 5, which seeks recovery based on theories of waiver and estoppel, also requires that damages be shown. *See* Docket 12 at 14; *Sacred Heart Health Services v. MMIC Ins., Inc.*, 675 F. Supp. 3d 937, 991 (D.S.D. 2023) (noting that the doctrine of promissory estoppel requires that a substantial economic detriment be suffered). Until an arbitration decision adverse to Finneman is rendered, such damages cannot be shown.

As a result, Counts 2 through 6 of the counterclaim are dismissed without prejudice.

## CONCLUSION

Thus, it is ORDERED that:

(1) ProAg's motion for summary judgment is granted in part and denied in part; the motion is granted in regard to Count 1's prayer for vacatur of the arbitration award and remand for further arbitration proceedings.

(2) ProAg's motion for summary judgement is denied as to Counts 2 through 6 of the counterclaim and Counts 2 through 6 are dismissed without prejudice.

28

(3)  Finneman's motion for summary judgement seeking confirmation of

the arbitration award is denied.

Dated July 9, 2024.

BY THE COURT:


/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE